JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 1211 *vs.* SEX OFFENDER REGISTRY BOARD.

Hampden. September 7, 2006. - December 5, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender. *Evidence,* Sex offender. *Administrative Law,* Substantial evidence.

Overview of the applicable statutory [755-758] and case [758-759] law governing registration of sex offenders.
This court concluded that G. L. c. 6, § 178K (2) (*d*), and 803 Code Mass. Regs. § 137A (2002) do not on their face violate the substantive [759-761] or procedural [761-762] due process rights of a level one sex offender who has committed a sexually violent offense against a child.
Several statutory and regulatory factors and subsidiary factors supported the determination of a hearing examiner with the Sex Offender Registry Board that the plaintiff sex offender posed a minimal threat, where the plaintiff's adult sex offending behavior was repetitive and compulsive and was committed on a child under the age of fourteen years who was extravulnerable and extrafamilial. [762-766]
This court did not address an argument that was raised in a single sentence. [766-767]

CIVIL ACTION commenced in the Superior Court Department on August 13, 2004.

A motion to dismiss was heard by *Tina S. Page,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Stephen R. Kaplan* for the plaintiff.

*Daniel A. Less,* Special Assistant Attorney General, for the defendant.

*Peter M. Onek,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GREANEY, J. A hearing examiner with the Sex Offender Registry Board (board) entered a written decision finding that

the plaintiff (Doe) (who had been sentenced to a house of correction after pleading guilty to a charge of indecent assault and battery on a child under fourteen years of age, in violation of G. L. c. 265, § 13B) "poses a low risk for sex offense recidivism and a low degree of dangerousness." The examiner ordered Doe to register with the board as a level one sex offender in accordance with G. L. c. 6, § 178K (2) (*a*).[1] The examiner's decision became the decision of the board. See G. L. c. 6, § 178L. A Superior Court judge reviewed the administrative record pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14, and dismissed Doe's complaint for judicial review of the board's decision. Doe appealed, and we granted his application for direct appellate review. Doe asserts that the registration statute, G. L. c. 6, § 178K (2) (*d*),[2] and accompany-

---

[1]The applicable version of the statute is that originally set forth in St. 1999, c. 74, and which predates the 2006 amendments.

[2]General Laws c. 6, § 178K (2) (*d*), provides:

"The board may, upon making specific written findings that the circumstances of the offense in conjunction with the offender's criminal history do not indicate a risk of reoffense or a danger to the public and the reasons therefor, relieve such sex offender of any further obligation to register, shall remove such sex offender's registration information from the registry and shall so notify the police departments where said sex offender lives and works or if in custody intends to live and work upon release, and where the offense was committed and the Federal Bureau of Investigation [FBI]. In making such determination the board shall consider factors, including but not limited to, the presence or absence of any physical harm caused by the offense and whether the offense involved consensual conduct between adults. The burden of proof shall be on the offender to prove he comes within the provisions of this subsection. The provisions of this subsection shall not apply if a sex offender has been determined to be a sexually violent predator; has been convicted of two or more sex offenses defined as sex offenses pursuant to the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. section 14071, committed on different occasions; or has been convicted of a sexually violent offense. *The provisions of this subsection shall also not apply if a sex offender has been convicted of a sex offense involving a child or a sexually violent offense,* and such offender has not already registered pursuant to this chapter for at least ten years, or if the sex offender is otherwise subject to lifetime or minimum registration requirements as determined by the board pursuant to section 178D." (Emphasis added.)

ing board regulation, 803 Code Mass. Regs. § 1.37A (2002),[3] which prohibit him from being relieved from any registration obligation,[4] violate his substantive and procedural due process rights under provisions of the Declaration of Rights to the Massachusetts Constitution. We reject his arguments and, treating the judgment as one upholding the board's decision, affirm the judgment.

The background of the case, drawn from the examiner's decision and related record materials, may be summarized as follows. Doe is now in his late fifties. In May, 1994, he pleaded guilty, in a District Court, to two counts of indecent assault and battery on a child under fourteen years of age, in violation of G. L. c. 265, § 13B. The victim was the eight year old daughter of his girl friend, with whom he had been living since November, 1991. The incidents occurred on separate dates and took place sometime between January and February of 1992. Doe was then forty-four years of age.

On the date of the first incident, the victim's mother had just given birth to Doe's baby daughter, and had brought the baby home from a hospital. The victim woke up in the middle of the night and went looking for her mother in the bedroom that her

---

[3]Under 803 Code Mass. Regs. § 1.37A(1) (2002), a sex offender may submit to the board a written motion for relief from a registration obligation. However, under § 1.37A(2), not all sex offenders are eligible for relief:

"(2) A sex offender is not eligible for relief, and the Board or the Hearing Examiner shall summarily deny a motion for relief if the offender:

"(a) has been determined to be a sexually violent predator;

"(b) has been convicted of two or more Wetterling Offenses committed on different occasions;

"(c) has been convicted of a *sexually violent offense*; or

"(d) *has been convicted of a sex offense involving a child*, whose offense was sexual in nature, and who has not already registered pursuant to [G. L.] c. 6, § 178E, as enacted on September 10, 1999, for at least ten years" (emphasis added).

[4]Under G. L. c. 6, § 178C, both a "[s]ex offense involving a child" and a "[s]exually violent offense" include the crime of indecent assault and battery on a child under fourteen years of age, in violation of G. L. c. 265, § 13B.

mother shared with Doe. When the victim did not see her mother, she became scared. Doe asked the victim if she wanted to come into the bed with him, and she proceeded to do so.

Doe then unzipped his jeans and put his penis against the victim's buttocks, trying to penetrate her anally. The victim grabbed his arm to make him stop. The victim's mother came into the room, and the victim was able to get away. The victim disclosed the assault to her mother and later to police.

On another occasion, the victim's mother was out of the house and Doe was looking after the victim and her younger brother. While the victim and her brother were watching television, Doe put his hand into the back of the victim's underwear, touching her buttocks.

When he tendered his guilty plea, Doe admitted the victim's allegations, but denied any penetration. With respect to the first charge and finding of guilt, Doe was sentenced to two and one-half years in a house of correction. The judge ordered eighteen months of this sentence to be served, and suspended its balance for six years, under probation supervision until May 19, 2000. On the second charge, a guilty finding was entered and the case was filed. Doe has no other criminal convictions. Doe was incarcerated from May 19, 1994, to August 25, 1995.

In September, 2003, the board notified Doe that it recommended that he register as a level two sex offender pursuant to G. L. c. 6, § 178K (2) (*b*). Doe challenged his obligation to register and his classification level, and requested an administrative review of the board's decision pursuant to § 178L.

On February 11, 2004, a hearing examiner commenced a de novo hearing. See 803 Code Mass. Regs. § 1.22(2) (2002). At the hearing, the board relied solely on documentary evidence, namely its "classification report" and attachments thereto. Doe testified, as did his wife and his treatment provider, Dr. Paul S. Lapuc, a psychologist with a doctorate in clinical psychology and an expert in sex offender treatments and recidivism risk assessment. Doe also relied on documentary evidence, including the treatment notes and a report of Dr. Lapuc.

The examiner subsequently entered an eighteen-page decision finding that Doe is required to register and must register as a level one sex offender. In addition to noting the charges and

proceedings against Doe mentioned above, and the circumstances underlying those charges, all of which were contained in the board's classification report and attachments, the examiner pointed out that, while incarcerated, Doe had participated in sex offender treatment twice weekly until released. Further, six months before his release, Doe began attending a Statewide sex offender treatment program. His participation was evaluated as good.

The examiner mentioned that the board did not submit any evidence at the hearing concerning Doe's behavior while on probation. In a letter to the board, reproduced as an attachment to the board's classification report, Doe indicated that his probation officer was supportive of him.

The examiner recounted the evidence of Doe's sex offender and other treatment following his incarceration. After release from incarceration, Doe continued sex offender treatment with Dr. Lapuc (Doe received sex offender treatment with Dr. Lapuc prior to, but not during, his incarceration). Dr. Lapuc diagnosed Doe as suffering from pedophilia, posttraumatic stress disorder (PTSD), and a dependent personality disorder. In addition, Doe sought treatment of his PTSD every two weeks with a counsellor from a Veterans Administration hospital. The examiner recounted some of Dr. Lapuc's testimony. Dr. Lapuc remarked that, over the course of his treatment, Doe showed substantial progress in understanding and addressing his sexually deviant behavioral triggers; demonstrated victim empathy; did not deny or minimize his crimes; developed a support network with his family, faith, community, and mental health system; and internalized the essential components of his relapse prevention model. Dr. Lapuc noted that Doe made major lifestyle changes, adhered to the precepts of his Muslim faith, and has shown a long-standing willingness to rehabilitate himself. Dr. Lapuc opined that Doe "poses no risk to the community or to his family . . . and the likelihood of recidivistic behavior is negligible."

Finally, the examiner considered the evidence concerning Doe's current circumstances. Doe testified at the hearing that he resides with his wife in a home that they own together. Doe stated that his wife and others are supportive of him. He testified that he does not smoke, drink, use any type of drugs, or

frequent bars, and that he is an active member of the Muslim community. Doe's wife (not the victim's mother, a former girl friend) testified on his behalf. She stated that she, and some of the board members of the Islamic center to which she and Doe belong, are fully aware of Doe's sex offense history. Doe's wife testified that she remains present with Doe during any children's activities sponsored or held by the Islamic center.

In his decision, the examiner first denied Doe's motion for relief from registration under G. L. c. 6, § 178K (2) (*d*), and 803 Code Mass. Regs. § 1.37A. The examiner explained that Doe is "legally prohibited" from relief from registration because Doe "has been convicted of sex offenses involving children, sexually violent offenses[,] and two or more Wetterling offenses."

The examiner went on to address Doe's classification level. He concluded that the board had proved by a preponderance of the evidence that Doe poses only a low risk of sex offense recidivism and "the degree of dangerousness posed to the public is not such that a public safety interest is served by public access to his registration information." The examiner explained that Doe's sexual misconduct "involved an extravulnerable, extrafamilial female child victim against whom he sexually offended in a repetitive and compulsive manner" and, on one occasion, in a public place as defined in 803 Code Mass. Regs. § 1.40(9)(c)(1) (2002) (defining public place as including area open to scrutiny of others). The examiner, however, concluded that Doe should be classified as a level one sex offender because circumstances existed that mitigated his risk for sex offense recidivism and degree of dangerousness.

1. An overview of applicable law will be useful, and we set out that overview.

a. The applicable statute governing registration was enacted by the Legislature in 1999, see St. 1999, c. 74 (1999 statute), in keeping with several decisions of this court citing infirmities in the prior registration scheme, see St. 1996, c. 239, and replacing that scheme. Decisions of this court dealing with the 1996 precursor to the present statute are summarized in *Roe* v. *Attorney Gen.*, 434 Mass. 418, 421-423 (2001). The *Roe* decision sets forth the key provisions of the 1999 statute as follows:

"The 1999 statute provides that a person convicted of any of the enumerated sex offenses on or after August 1, 1981, or released on or after August 1, 1981, from confinement, parole, or probation supervision following a conviction of one of these offenses, is a '[s]ex offender.' G. L. c. 6, § 178C. The definition of '[s]ex offender' includes a juvenile adjudicated delinquent by reason of a sex offense or a youthful offender who has been convicted of a sex offense. *Id.*

"The 1999 statute provides for the appointment by the Governor of a seven-member sex offender registry board. G. L. c. 6, § 178K (1). A sex offender who lives or works in the Commonwealth must register with the board by mail, listing his name, home address, and (if applicable) work address, or his intended home and work addresses. § 178E (*a*)-(*c*), 178E (*g*)-(*h*), 178E (*l*). He must verify this information annually and report any changes to the board. §§ 178F, 178F ½. The penalty for a first offense of knowingly failing to register or failing to notify the board of any changes is from six months to two and one-half years in a house of correction, up to five years in State prison, a $1,000 fine, or both a fine and imprisonment. § 178H (*a*) (1).

"The 1999 statute provides for postregistration hearings and mandates the order of priority in which offenders are to be reviewed. G. L. c. 6, §§ 178K (3), 178L. The board is to promulgate guidelines for classifying an offender's level of dangerousness and risk of reoffense and apply those guidelines to assess the risk level of particular offenders. § 178K (1). The board may determine that an offender does not pose a danger or risk of reoffense and relieve him of any further registration requirement. § 178K (2) (*d*). Once an offender receives notice from the board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. § 178L. The board then assigns a final risk classification level: level one (low); level two (moderate); or level three (high). §§ 178K (2), 178L (2). Offenders may seek judicial review pursuant to G. L. c. 30A, § 14, of the board's final classification and registration requirements. § 178M.

"Prior to final classification by the board, information concerning offenders is not available to the public, but only to law enforcement agencies. G. L. c. 6, §§ 178I, 178J (c); 178K (2) (a)-(c). Public notification depends on an offender's classification level. § 178K (2) (a)-(c). Persons classified as level two and level three offenders must register each year in person at their local police station, and their registry information is available on request to members of the public over eighteen years of age who state that they are requesting such information for their own protection or for the protection of another person for whom they have responsibility. §§ 178F ½, 178I, 178J, 178K (2) (b)-(c). Information regarding level three offenders will be disseminated through active community notification. § 178K (2) (c).

"A person classified as a level one offender must continue to register annually by mail. G. L. c. 6, § 178F. As long as his classification remains at level one, an offender's registry information is available only to law enforcement agencies, not to any member of the public. § 178K (2) (a).

"The board must maintain a central computerized registry of sex offenders. G. L. c. 6, § 178D. The file on each offender contains the offender's registration data. . . . The board must 'promptly' transmit such data to the Federal Bureau of Investigation (FBI) and to police departments in the municipalities where the offender intends to live and work, and the municipality where the offense occurred. § 178E (a)-(c), 178E (g)-(j), 178E (l)." (Footnotes omitted.)

*Id.* at 423-426.

Under G. L. c. 6, § 178K (2) (d), see note 2, *supra*, and 803 Code Mass. Regs. § 1.37A, see note 3, *supra*, not all sex offenders, currently including Doe, may be relieved of the obligation to register.[5] Similarly, the provision concerning automatic

---

[5]A sex offender also may not be relieved of his obligation to register if he has been convicted of two or more sex offenses as defined in 42 U.S.C. § 14071 (2000), the so-called Jacob Wetterling Act. See note 2, *supra*. This

termination of the duty to register appears not to apply to Doe because he has been convicted of a sexually violent offense. See G. L. c. 6, § 178G.

b. The *Roe* decision is the only decision of this court dealing with the 1999 statute. *Roe* v. *Attorney Gen.*, 434 Mass. 418 (2001). The *Roe* court held that sex offenders may be required to provide the board with their names and addresses *prior to* the conducting of individualized hearings (concerning whether they currently present a risk to children or other vulnerable persons), and that the board may furnish registration data[6] to law enforcement authorities, without violating the due process protections of art. 12 of the Massachusetts Declaration of Rights. *Id.* at 419-420. Justice Cowin concurred, on the basis that the provision in issue was facially valid, but could be susceptible to an "as applied" challenge in certain cases where automatic dissemination of registration data to law enforcement authorities raises due process concerns. *Id.* at 442-443. Her separate opinion identified those cases (in general terms) in the following way:

---

Federal legislation requires sex offenders to register for life if the sex offender has one or more prior convictions for certain offenses, including a conviction of a "criminal offense against a victim who is a minor." See 42 U.S.C. § 14071(a)(3)(A), (b)(6)(B)(i). The hearing examiner erroneously held that this provision applied to Doe. The provision is not applicable because Doe was not sentenced on the guilty finding on the second charge of indecent assault and battery on a child under fourteen years of age, that charge being placed on file. Under established Massachusetts law, there is no *judgment of conviction* on a criminal charge unless a sentence is imposed. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975), and cases cited. See also *Commonwealth* v. *Bianco*, 390 Mass. 254, 257 (1983), and cases cited; 803 Code Mass. Regs. § 1.40(9)(b) (noting board uses separate sentencing dates to distinguish between offenders who commit separate offenses over period of time and those who commit a single offending episode).

[6]"Registration data" includes the sex offender's name, aliases used, date and place of birth, sex, race, height, weight, eye and hair color, Social Security number, home and work addresses; a photograph and set of fingerprints; a description of the offense, the city in which the offense occurred, the date of conviction or adjudication, and the sentence imposed; and any other information that may be useful in identifying the sex offender or his risk of reoffense. See G. L. c. 6, § 178D. As noted in *Roe* v. *Attorney Gen.*, 434 Mass. 418, 419 n.3 (2001), "[a]lthough offenders previously convicted and not currently incarcerated or under supervision are only required to submit their names[, dates of birth,] and home and work addresses, § 178E (*l*), it would appear that the additional information may be obtained by the board from the already existing arrest, incarceration, or parole records of offenders."

"The statute includes offenses 'whose seriousness we well recognize' as well as those where the risk of reoffense 'may be minimal and the present danger of [the offender] to children not significant.' *Doe* v. *Attorney Gen.*, 430 Mass. 155, 164, 165 (1999) (*Doe [No. 5]*). For example, the offense of rape and abuse of a child, G. L. c. 265, § 23, and an attempt to commit this offense, may include individuals involved in consensual sexual experimentation with teenage peers. See, e.g., *Doe (No. 5)*, *supra* at 164 (discussing G. L. c. 265, § 23)" (footnote omitted).

*Roe* v. *Attorney Gen.*, *supra* at 444 (Cowin, J., concurring). Three Justices (Chief Justice Marshall and Justices Ireland and Cordy) concurred insofar as the 1999 statute required registration *before a hearing* of sex offenders who pose "a grave threat to children" and where the risk of reoffense "is compelling," and dissented as to sex offenders who posed *no* threat to children or other vulnerable persons, especially in the statute's retrospective application. *Id.* at 446-447 (Marshall, C.J., concurring in part and dissenting in part).

2. As a preliminary matter (and to the extent that Doe makes such an argument), there is no merit to the assertion that G. L. c. 6, § 178K (2) (*d*), see note 2, *supra*, and 803 Code Mass. Regs. § 1.37A, see note 3, *supra*, on their face violate substantive and procedural due process protections possessed by a level one sex offender who has committed a sexually violent offense against a child.

a. As to substantive due process, Doe's liberty and privacy interests obviously are not fundamental. See, e.g., *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 100-102 (1998); *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143 (1997). Doe has a "diminished expectation of privacy in [his] identity," *Landry* v. *Attorney Gen.*, 429 Mass. 336, 344 (1999), cert. denied, 528 U.S. 1073 (2000); see *Murphy* v. *Department of Correction*, 429 Mass. 736, 739 (1999), and no public dissemination is involved as to a level one sex offender.

The statute and regulation "bear[] a reasonable relation to a permissible legislative objective." *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 268 (1992), quoting *Pinnick* v.

*Cleary,* 360 Mass. 1, 14 (1971). That legislative purpose is set forth in the 1999 statute's emergency preamble: "Whereas, The deferred operation of the act would tend to defeat its purpose, which is to protect forthwith the vulnerable members of our communities from sexual offenders . . . ." St. 1999, c. 74, Preamble. The purpose is affirmatively supported by expressed legislative findings,[7] as well as by other considerations and research involving pedophiles like Doe.[8] There is no facial

---

[7]Statutes 1999, c. 74, § 1, provides:

"The general court hereby finds that: (1) the danger of recidivism posed by sex offenders, *especially sexually violent offenders* who commit predatory acts characterized by repetitive and compulsive behavior, to be grave and that the protection of the public from these sex offenders is of paramount interest to the government; (2) law enforcement agencies' efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the existing lack of information known about sex offenders who live within their jurisdictions and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders; (3) the system of registering sex offenders is a proper exercise of the commonwealth's police powers regulating present and ongoing conduct, which will provide law enforcement with additional information critical to preventing sexual victimization and to resolve incidents involving sexual abuse promptly; (4) in balancing offenders' rights with the interests of public security and safety, the release of information about sex offenders to law enforcement before the opportunity for an individual determination of the sex offender's risk of reoffense is necessary to protect the public safety; (5) registration by sex offenders is necessary in order to permit classification of such offenders on an individualized basis according to their risk of reoffense and degree of dangerousness; (6) the public interest in having current information on certain sex offenders in the hands of local law enforcement officials, including prior to such classification, far outweighs whatever liberty and privacy interests the registration requirements may implicate. Therefore, the commonwealth's policy, which will bring the state into compliance with federal requirements, is to assist local law enforcement agencies' efforts to protect their communities by requiring sex offenders to register and to authorize the release of necessary and relevant information about certain sex offenders to the public as provided in this act." (Emphasis added.)

[8]The Legislature reasonably could have recognized that adult sex offenders who target children are especially dangerous because, as recognized by the board (based on research cited by the board in its regulations), they "pose a heightened risk to public safety since children normally lack the physical and mental strength to resist an offender. In addition, children can be lured into dangerous situations more easily than most adults," 803 Code Mass. Regs.

substantive due process issue. Cf. *Commonwealth* v. *Knapp*, 441 Mass. 157, 164 (2004) (State has legitimate and compelling interest in protecting public from harm by sexually dangerous persons). See *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd., supra* at 103 n.13 (State has "a compelling interest in protecting the public from future crimes"), and cases cited.

b. Nor is there any facial procedural due process issue. The requirement that Doe register is "implemented in a fair manner." *Aime* v. *Commonwealth*, 414 Mass. 667, 674 (1993). Doe's registration requirement does not occur in a vacuum. See *Commonwealth* v. *Knapp, supra* at 165. A sex offender, like Doe, is protected from the risk of erroneous deprivation of liberty by the requirement of having been convicted of, and sentenced on, at least one qualifying and inherently violent sexual offense. We note that the sex offender has thirty days to provide the board with any information useful to assess his obligation to register. See G. L. c. 6, § 178L. If the board's conviction data are incorrect, the sex offender has the opportunity to demonstrate to the board that he was not convicted of the sex offense at issue. If the sex offender contests the board's conclusion that he was convicted of the subject sex offense, he may request a hearing under § 178L and, ultimately, seek judicial review of any decision pursuant to § 178M.

While the duty to register and update information annually (all by mail in Doe's case and with no dissemination to the public) is a burden and somewhat intrusive, these particularly dangerous sex offenders are not facing a loss of liberty in the sense that they are subject to detention, confinement, or commitment. Nor are they *publicly* identified as sex offenders.

§ 1.40(3) (2002). The Legislature also may have relied on research concluding that a clean record for a period of years after a first sex offense does not indicate that a sex offender will not commit another sex offense, and that "child molesters are at risk to reoffend sexually throughout their lives." Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis, 21 L. & Hum. Behav. 635, 652 (1997). This is especially so as to Doe, a pedophile, whose condition is incurable. See note 14, *infra.* A registration requirement for these sex offenders reasonably enables law enforcement to ascertain their relative whereabouts (home and work addresses), to identify them (from the registration data concerning information such as height, weight, eye color), and to take proper precautions for vulnerable persons in the local communities.

In light of the State's important and reasonable interests, previously described, procedural due process is not offended by a registration requirement.

3. We come to Doe's principal challenge, namely that, *as applied to him*, the statute and regulation are unconstitutional because, contrary to what was found by the examiner, he does not constitute any risk of harm to children and, thus, should not be required to register at all. This argument calls into question the correctness of the examiner's decision. If no substantial evidence supports that decision, and if the record established that Doe poses no risk at all, then the statute and regulation, considered on an as applied basis, might be constitutionally vulnerable. We conclude, however, that the examiner's decision that Doe poses a minimal threat is correct. As a consequence, the larger issue, whether an offender who is found by an examiner to pose absolutely no risk to children can, consistent with constitutional protections, be compelled to register, may be left for decision to another day.

Doe does not challenge the examiner's statement of the testimony and evidence, or underlying evidence, but rather summarily challenges the examiner's ultimate conclusion, arguing that the examiner's determination, that Doe presented a cognizable risk of reoffense, was unsupported by the record because the record establishes his "total rehabilitation." Doe overlooks the complete content of the record, including his own expert's (Dr. Lapuc) concession that, "I don't think that once anybody's engaged in sexual acting out behavior can you say that there is absolutely no risk."

Based on his review of the evidence, the examiner reasonably concluded, based on substantial evidence, that several statutory and regulatory factors and subsidiary factors[9] supported a determination that Doe's over-all level of risk to reoffend and degree of dangerousness was low, and not "close to nil." Doe's

_____

[9]By statute and regulation, namely G. L. c. 6, § 178K (1) (*a*)-(*l*), and 803 Code Mass. Regs. § 1.40, the board must consider various enumerated factors in assessing the risk of reoffense and level of dangerousness a sex offender may present. The board is not limited to these factors alone and is expressly authorized to consider "any information useful" in its assessment. See G. L. c. 6, § 178L (1). In making a determination, the hearing examiner is not bound by the board's recommendations, and must independently apply the facts to the enumerated factors. See 803 Code Mass. Regs. § 1.22 (2002).

admission to having committed the sexual misconduct underlying the two charges of indecent assault and battery on a child under fourteen years of age supported the examiner's findings that his adult sex offending behavior was repetitive and compulsive (on one occasion Doe put his penis against the victim's buttocks, trying to penetrate her anally; and on a different occasion, Doe put his hand in the back of the victim's underwear); he sexually assaulted a child (the victim was eight years old); he sexually assaulted an extravulnerable child (the victim was under the age of ten years); and he sexually assaulted an extrafamilial victim (the victim had a nonfamilial relationship with Doe and lived in the same household with Doe for less than two years before the offending behavior occurred), thus satisfying the factors in G. L. c. 6, § 178K (1) (a) (iii), and 803 Code Mass. Regs. § 1.40(3) (sex offender an adult who targeted child); G. L. c. 6, § 178K (1) (a) (ii), and 803 Code Mass. Regs. § 1.40(2) (repetitive and compulsive)[10]; 803 Code Mass. Regs. § 1.40(9)(c)(4), (9)(c)(12) (extravulnerable child); G. L. c. 6, § 178K (b) (i), and 803 Code Mass. Regs. §§ 1.40(3)(b), (7) (extrafamilial victim). Significantly, the Legislature has determined that two of the above mentioned factors, repetitive and compulsive sexual misconduct and an adult committing a sexual offense against a child, indicate a *"high risk* of reoffense and degree of dangerousness posed to the public" (emphasis added). G. L. c. 6, § 178K (1) (a) (ii), (iii). As explained by the board in its regulations:

> "This [f]actor [repetitive and compulsive behavior] reflects the fact that certain offenders manifest their compulsive behavior by engaging in a continuing course of sexual misconduct involving separate incidents with either the same victim or others. The [b]oard considers these offenders as presenting a greater risk to reoffend and

---

[10]This factor speaks to the "sex offender's conduct" and his "behavior," G. L. c. 6, § 178K (1) (a) (ii), and to "separate incidents of sexual misconduct," 803 Code Mass. Regs. § 1.40(2), and not to separate "offenses" or judgments of conviction. Cf. G. L. c. 6, § 178K (1) (b) (iii), and 803 Code Mass. Regs. § 1.40(9) (concerning prior and separate offenses as distinguished by, insofar as relevant here, a judgment of "conviction"). We therefore reject Doe's argument that the examiner incorrectly determined that his conduct was both repetitive and compulsive.

as posing an increased degree of dangerousness. (For [a]dult [o]ffenders: *Hanson & Thornton 1999; Hanson & Bussiere, 1998; Epperson, Kaul & Huot, 1995; McGovern & Peters, 1988*)."

803 Code Mass. Regs. § 1.40(2). Further, with respect to adult sex offenders who target children as their victims, § 1.40(3) states:

"Research indicates that [a]dult [o]ffenders who target as their victims children who are either extrafamilial or strangers, are more likely to reoffend over time than other sex offenders. (*Prentky, Lee, Knight & Cerce, 1997; Abel, Osbourne & Twiggs, 1993; Weinrott & Saylor, 1991*). . . . Moreover, such offenders pose a heightened risk to public safety since children normally lack the physical and mental strength to resist an offender. In addition, children can be lured into dangerous situations more easily than adults."

In view of these two "high risk" factors, and other risk factors noted, the examiner was not bound to accept Dr. Lapuc's conclusion that the likelihood of Doe reoffending is "close to nil," and the examiner reasonably declined to find that Doe's risk-reducing factors[11] completely ameliorated his risk of reoffense and degree of dangerousness. The examiner carefully considered and weighed all the evidence, concluding that Doe constituted a low level of risk that necessitated a registration obligation. This conclusion was supported by substantial evidence. See G. L. c. 30A, § 14 (7).

We add that the examiner's consideration of the filed guilty finding on the second charge of indecent assault and battery on a child under fourteen years of age is immaterial. In determin-

---

[11]Regarding risk reducing factors, the examiner concluded that Doe had remained offense free in the community for over nine years, see 803 Code Mass. Regs. § 1.40(9)(a); Doe resided in a positive and supportive environment, see G. L. c. 6, § 178K (1) (*c*), and 803 Code Mass. Regs. § 1.40(12); Doe's expert witness characterized Doe's risk of reoffense as "negligible," see G. L. c. 6, § 178K (1) (*f*), and 803 Code Mass. Regs. § 1.40(15); Doe participated in sex offender treatment during his incarceration and during his release, see G. L. c. 6, § 178K (1) (*c*), (*h*), and 803 Code Mass. Regs. § 1.40(17), (18), (24); and Doe had a positive adjustment to incarceration and probation, see G. L. c. 6, § 178K (1) (*i*), and 803 Code Mass. Regs. § 1.40(19), (20).

ing risk of reoffense and degree of dangerousness, the fact that Doe was sentenced on only one charge involving a sex offense on a child by itself indicates a high risk. 803 Code Mass. Regs. § 1.40(9)(c)(12) ("Pursuant to [G. L.] c. 6, § 178C, the [L]egislature designated certain sex offenses to be sex offenses involving children and/or sexually violent offenses. The [board] has determined that the commission of *one* or more of these offenses, in and of itself, demonstrates an increased risk to children and other vulnerable persons" [emphasis added]). A single additional judgment of conviction of the same charge against the same victim adds little to the analysis, especially where the misconduct underlying that charge may be considered in assessing whether the misconduct was repetitive and compulsive, see G. L. c. 6, § 178K (1) (*a*) (ii), and 803 Code Mass. Regs. § 1.40(2).[12]

Further, other factors that were not mentioned by the examiner, but that find support in the record, support our conclusion. One such factor is that Dr. Lapuc diagnosed Doe as suffering from pedophilia,[13] a "mental abnormality" and "high risk" factor under G. L. c. 6, § 178K (1) (*a*) (i), and 803 Code

---

[12]Under 803 Code Mass. Regs. § 1.40(9)(c)(1), an examiner should inquire whether a sex offense occurred in a public place, or "area that is open to the scrutiny of others." This inquiry, however, may only be made with respect to "prior offenses," which encompasses only those convictions on which sentences have been imposed. In this case, where the record does not indicate the sexual misconduct comprising each charge, and where a sentence was not imposed on each charge, the examiner should not have considered the public nature of Doe's assault of the victim in the presence of her brother. Because this consideration was but one factor overshadowed by other factors, including two "high risk" factors, the examiner's ultimate conclusion remains reasonable and supported by substantial evidence.

[13]Pedophilia is a psychiatric disorder, not a legal classification. See Fagan, Pedophilia, 288 JAMA 2458, 2459 (2002) (Fagan). "Not all who sexually abuse minors are pedophilic. For example, some who sexually abuse children may opportunistically select minors simply because they are available." *Id.* Pedophilia is clinically defined as consisting of three diagnostic criteria:

"A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).

"B. The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

Mass. Regs. § 1.40(1), linked to sexual recidivism, and which has no cure.[14] While Doe has not reoffended and his psychologist reported that Doe had progressed in his treatment[15] and rehabilitation, Doe has yet to be alone with children (Doe's wife or another adult is always present). This circumstance may have been motivated "to avoid any perception that he would ever act out." The fact remains that there is no objective certainty that Doe can be trusted alone with children, Yet, as an Islamic Imam (minister) Doe has placed himself in an environment where he regularly encounters children. See G. L. c. 6, § 178L (1) ("any information useful" may be used to assess risk of reoffense and degree of dangerousness posed by sex offender).

Finally, nowhere in his decision does the examiner indicate that, but for the application of G. L. c. 6, § 178K (2) (d), and 803 Code Mass. Regs. § 1.37A, pertaining to relief from registration, he would have relieved Doe from registration. Such a claim constitutes mere speculation, and we do not consider it.

4. We do not address Doe's argument, raised in a single sentence, that G. L. c. 6, § 178K (2) (d), and 803 Code Mass.

---

"C. The person is at least age 16 years and at least 5 years older than the child or children in Criterion A."

Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 572 (4th ed. 2000) (DSM-IV).

[14] "Since the late 1980s, pedophilia has generally not been considered curable in the sense that the individual would no longer be sexually attracted to children. . . . Currently, pedophilia is considered a chronic disorder." Fagan, *supra* at 2462. See Priest, Counseling Adult Sex Offenders: Unique Challenges and Treatment Paradigms, 71 J. Counseling & Dev. 27, 29 (1992) (noting "significant number of researchers and practitioners" have "avoided any discussion of the word *cure* when working with pedophiles" and that the "operative word seems to be *control* as opposed to *cure*").

[15] It should be noted that treatment for pedophilia is often ineffective. See Fagan, *supra* at 2463 ("early treatment efforts have been unsuccessful"); Rosler, Treatment of Men with Paraphilia with a Long-Acting Analogue of Gonadotropin-Releasing Hormone, 338 New Eng. J. Med. 416, 416 (1998) ("The treatment of men with paraphilia is difficult. Surgical castration, psychotherapy, and pharmacotherapy have all been used but are often unsuccessful" [footnotes omitted]). The condition of paraphilia, which includes pedophilia as well as other conditions, is characterized by "recurrent, intense sexually arousing fantasies, sexual urges, or [certain] behaviors." DSM-IV at 566.

Regs. § 1.37A subject him to an unlawful conclusive presumption of registrability because the contention does not rise to the level of acceptable appellate argument. See *McClure* v. *Secretary of the Commonwealth*, 436 Mass. 614, 615 n.3, cert. denied, 537 U.S. 1031 (2002). We also need not speculate on how pending Federal and State legislation may affect Doe. Our decision must rest on present legal and factual circumstances.

5. The judgment of the Superior Court, which we treat as a judgment upholding the board's decision, is affirmed.

*So ordered.*