79 Mass. App. Ct. 683 (2011)                                    683

Doe, Sex Offender Registry Board No. 1 v. Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 1 vs. SEX
OFFENDER REGISTRY BOARD.

No. 09-P-2295.

Essex. February 10, 2011. - June 14, 2011.

Present: KAFKER, FECTEAU, & CARHART, JJ.

*Sex Offender Registration and Community Notification Act. Sex Offender.
Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender.

Discussion of the procedures and guidelines used by the Sex Offender Registry
    Board in determining whether an individual is required to register as a sex
    offender. [686-687]
The Sex Offender Registry Board, in conducting a final hearing to determine
    whether to classify an individual as a sex offender, did not exceed its statu-
    tory authority or violate the principles of due process by holding the hear-
    ing while the individual was incarcerated at a treatment center [687-689];
    further, the individual failed to demonstrate either that prejudice arose
    when the hearing officer, in applying the classification factors set forth in
    803 Code Mass. Regs. § 1.40, did not consider those factors relating only
    to released offenders [689-690], or that the security requirements imposed
    on visitors to the treatment center had a chilling effect on the individual's
    ability to call witnesses [690].
The Sex Offender Registry Board (board), in conducting a final hearing to
    determine whether to classify an individual as a sex offender, did not
    exceed its regulatory or statutory authority or violate the individual's State
    or Federal due process rights by conducting the hearing via video confer-
    ence, where the board's enabling legislation and companion regulations
    provided for significant flexibility of procedures and did not require an of-
    fender's physical presence at a final classification hearing; where the board
    established that the procedures utilized were sufficient to minimize the risk
    of the erroneous deprivation of the individual's due process rights; where
    the Commonwealth's financial and administrative interests in utilizing
    video conferencing justified its use; and where there was no showing that
    proceeding via video conferencing in any way increased the likelihood of
    an erroneous classification in this case. [690-695]

CIVIL ACTION commenced in the Superior Court Department on
December 26, 2008.

The case was heard by *Timothy Q. Feeley,* J., on a motion for
judgment on the pleadings.

*Michael A. Nam-Krane* for the plaintiff.

*Jennifer K. Zalnasky* for the defendant.

KAFKER, J. John Doe appeals the final decision of the Sex Offender Registry Board (board) classifying him as a level three sex offender. Doe argues that the board's final classification hearing was improper because the hearing was conducted (1) while Doe was incarcerated, and (2) by way of video conferencing. As such, Doe contends that the final classification hearing violated the regulatory and statutory authority of the administrative agency and his due process rights. We affirm.

*Background.* The following facts are taken from the hearing examiner's decision in the board's final classification of Doe. At the time of the hearing officer's decision on November 21, 2008, Doe was a forty-six year old male incarcerated at the Massachusetts Treatment Center in Bridgewater. The plaintiff's criminal record is extensive. Since 1983, the plaintiff has been convicted of four separate sex offenses and a number of other nonsexual crimes, several of which were violent.

In 1983, Doe pulled his pants down, took his penis in his hand, and touched a woman previously unknown to Doe on her buttocks while riding in a Massachusetts Bay Transportation Authority train. Doe was subsequently convicted of indecent assault and battery on a person over fourteen, in violation of G. L. c. 265, § 13H. He received a two-year sentence with eight months to be served and the balance suspended.

On July 25, 1985, while on community supervision for an unrelated offense, Doe unzipped his pants, pulled down his seven year old niece's underpants, and sat her upon his lap. As a result, Doe was convicted of indecent assault and battery on a child under fourteen years old, in violation of G. L. c. 265, § 13B, and received a two and one-half year sentence.

On April 9, 1991, Doe was convicted of a third offense of indecent assault and battery, for which he received another two and one-half year sentence. The record lacks any evidence related to the circumstances of this offense.

Doe's most recent sexual offense occurred on October 18, 2002. On that date, Doe entered the home of a woman he had known for six years and crawled into bed with her. Doe removed

his shirt, hugged the victim, and fondled her buttocks. When the victim realized the man was not her husband, she began to scream and struggle. At this point, Doe covered her mouth with his hand, held her down, and threatened to kill her if she did not stop screaming. As a result of this conduct, Doe was convicted of the following: indecent assault and battery on a person age fourteen or over, in violation of G. L. c. 265, § 13H, for which he received a two and one-half year sentence; threatening to commit a crime, to wit, murder, in violation of G. L. c. 275, § 2, for which he received a six-month concurrent sentence; and unarmed burglary and assault, in violation of G. L. c. 266, § 15, for which he received a ten-year probationary term from and after his incarceration.

In addition to these sex offenses, Doe has other criminal convictions. In 1981, Doe was convicted of larceny of a motor vehicle. In 1986, he was convicted of receiving stolen property. Two years later, in 1988, Doe was convicted of both assault and battery and assault and battery by means of a dangerous weapon. One year later, Doe initially received a continuance without a finding on a charge of assault and battery; he then violated probation, was convicted on the charge, and was committed for six months.

In 1994, Doe was convicted of assault and battery by means of a dangerous weapon and received a five- to seven-year split sentence with three years committed. This conviction was the result of a brutal beating by Doe of his then girlfriend, whereby Doe beat his girlfriend unconscious, continued beating her when she regained consciousness, and threatened to kill her several different times.

Most recently, Doe was convicted of assault and battery on a correction officer and threatening to commit a crime in 2006 while incarcerated for his 2002 sexual offenses. Consequently, Doe was sentenced to two and one-half years for the assault and battery offense and a six-month concurrent sentence for his threat to commit a crime conviction.

While incarcerated on or about April 22, 2008, the board notified Doe that he was required to register as a level three sex offender, pursuant to G. L. c. 6, § 178K(2). Doe subsequently requested and was granted a de novo hearing, which took place

on November 7, 2008. This hearing took place while Doe was incarcerated. Further, the hearing was conducted by way of video conference; the board's attorney and the hearing examiner participated in the hearing from the board's office in Salem, and Doe and his attorney participated from the Old Colony Correctional Center in Bridgewater. Prior to and once again during the hearing, defense counsel objected to the final classification hearing taking place both while the defendant was incarcerated and via video conference. Both objections were overruled.

At the hearing, neither party offered any witnesses, nor does the record show that Doe testified on his own behalf. Both parties, however, submitted documentary evidence pursuant to the board regulations and guidelines, 803 Code Mass. Regs. §§ 1.00 et seq. (2004). On November 21, 2008, two weeks after the final classification hearing, the hearing examiner affirmed the board's classification of Doe as a level three sex offender, in accordance with G. L. c. 6, § 178K(2)(*c*), concluding that Doe "poses a high risk for sex offense recidivism and a high degree of dangerousness."

Doe subsequently sought judicial review of the board's decision in the Superior Court, pursuant to G. L. c. 6, § 178M, and G. L. c. 30A, § 14. Following a hearing, the Superior Court judge affirmed the board's decision, concluding that (1) the board's final classification was supported by substantial evidence; (2) the board's hearing by way of video conference while Doe was incarcerated was not improper; and (3) active dissemination of Doe's identifying information did not violate his State or Federal constitutional rights. Doe now appeals the board's decision to this court.

*Discussion.* 1. *The board.* The board is an administrative agency charged with "establish[ing] and maintain[ing] a central computerized registry of all sex offenders required to register pursuant to [G. L. c. 6, §§] 178C to 178P." G. L. c. 6, § 178D, as amended by St. 1999, c. 74, § 2. "[Title] 803 [Code Mass. Regs. §] 1.00 sets forth the registration and classification procedures and Guidelines the Board uses to determine whether a convicted or adjudicated sex offender may be required to register as a sex offender and, if so, the offender's level of risk of reoffense and degree of dangerousness posed to the public." 803 Code Mass. Regs. § 1.01 (2004).

An individual is required to register as a sex offender if he or she has been convicted or adjudicated of a sex offense, as defined in G. L. c. 6, § 178C; if the offense was of a sexual nature; if the individual lives, works, or is pursuing higher education in the Commonwealth; and if the individual poses a current danger. 803 Code Mass. Regs. § 1.06(2)(a)-(d) (2004). When the board determines that the above criteria apply, the individual must register as a sex offender. At this point, the board recommends a classification level based upon an individual's risk of reoffending and degree of dangerousness. A level three classification, the highest level and the level designated to Doe in this case, is appropriate "[w]here the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination." G. L. c. 6, § 178K(2)(*c*), as amended by St. 1999, c. 74, § 2.

The board makes an initial recommendation "regarding the offender's duty to register and classification level which the sex offender can accept or reject." 803 Code Mass. Regs. § 1.01. If the offender accepts the recommendation, it becomes final. Alternatively, the offender can reject the recommendation by requesting a de novo hearing. At such a hearing, the hearing examiner determines, based upon "the totality of all the relevant evidence introduced at the offender's individualized hearing," the offender's obligation to register and classification level. *Ibid.* See 803 Code Mass. Regs. § 1.10(1) (2002). Following the board's decision, "[a]n offender may seek judicial review . . . of the board's final classification and registration requirements." G. L. c. 6, § 178M, as amended by St. 1999, c. 74, § 2.

2. *Conducting final classification hearing while sex offender is incarcerated.* Doe argues that the board should not have conducted Doe's final classification hearing while he was incarcerated. Doe contends that holding the hearing while he was incarcerated exceeded the statutory authority of the board and also, inter alia, violated Doe's procedural due process rights. We disagree. In *Doe, Sex Offender Registry Bd. No. 3974* v. *Sex Offender Registry Bd.*, 457 Mass. 53 (2010), the Supreme Judicial Court, albeit in dictum, identified the flaws in the argument that

only the initial classification may occur while the sex offender is incarcerated. The Supreme Judicial Court reasoned: "[T]he board is *required* to classify incarcerated sex offenders before they are released: The board must begin classification proceedings at least sixty days prior to the offender's release, G. L. c. 6, § 178L(1)(*a*), and must classify the offender at least ten days before the offender's earliest possible release date, G. L. c. 6, § 178E(*a*). Moreover, the argument [that the board's authority to classify incarcerated sex offenders is limited to the initial and not the final classification] does not account for the fact that an initial classification becomes 'final' if a sex offender fails to object to it, regardless of whether the offender continues to be incarcerated. G. L. c. 6, § 178L(1)(*a*) . . . . That G. L. c. 6, § 178E(*a*), references the procedures of G. L. c. 6, § 178L, suggests that it also incorporates the latter's reference to 'final' classifications." *Id.* at 60-61.

The statutory purposes are also promoted by allowing final classifications of sex offenders while they are incarcerated. The sex offender registry law is designed to protect the public from "the danger of recidivism posed by sex offenders." St. 1999, c. 74, § 1. The final identification and classification of such offenders before their release back into the community, and the dissemination, where their classification calls for such dissemination, of information regarding the offender's identity, offenses, and address, are necessary to accomplish the statutory purposes. See *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750, 759-760 (2006).

Doe also argues that conducting his hearing while he was incarcerated violated his procedural and substantive due process rights. As the hearing officer properly found, Doe's "due process rights are secured by the procedural safeguards found in the statute; namely the opportunity to submit evidence; the right to de novo review of the preliminary classification, and the right to Superior Court review of a final decision." "[A]ppropriate and adequate safeguards are included in the classification regulations that allow the offender to have a hearing before an impartial hearing examiner for an individualized determination, appointment of counsel if the offender is indigent, entitlement to prehearing discovery, the ability to file motions prior to or during

the hearing, and the opportunity to review the detailed, written final classification decision based on a preponderance of the evidence." *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 776 (2006).

There is also no substantive due process violation here. See *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 102 (1998); *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. at 760-761. The liberty and privacy interests affected by Doe's classification as a level three sex offender are weighty but they have not been deemed fundamental rights, and the State has a legitimate and compelling interest in protecting the public from harm from sex offenders. *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, *supra* at 103 n.13. *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, *supra* at 760. *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. at 775-776. Cf. *Commonwealth* v. *Knapp*, 441 Mass. 157, 164 (2004) (examining due process rights for civil commitment of sexually dangerous persons). As explained above, the final classification of the sex offenders, and the dissemination of information to the public regarding level three offenders such as Doe,[1] prior to their release from incarceration serves that purpose. See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, *supra* at 775-776. Accordingly, Doe's substantive due process argument must fail.

We also briefly address and reject Doe's subsidiary arguments related to classifying him while incarcerated. He claims that he was prejudiced because 803 Code Mass. Regs. § 1.40 (2004) lists numerous factors that guide the hearing examiner and that several of these relate only to released offenders, thereby suggesting he must be released so that these factors may be considered. The hearing officer is, however, only required to consider applicable factors, and not all factors are applicable to all offenders. See 803 Code Mass. Regs. § 1.22(3) (2002) ("*Where applicable*, the Hearing Examiner shall apply such

---

[1]Doe was a level three sex offender, thus requiring public dissemination by the appropriate police department of relevant information, including his name, home and work addresses, offenses for which he was convicted, and his photograph.

facts to the statutory factors as are set forth in [G.L.] c. 6, § 178[K][1][a] through [1]" [emphasis added]).

Doe also contends that his right to call witnesses under G. L. c. 30A, § 11(3), was prejudiced because the security requirements imposed on visitors to Department of Corrections facilities would have a "chilling effect" on his ability to call witnesses. He never sought to call any witnesses, however, and he does not explain how or why any potential witnesses he might have called were discouraged from testifying on his behalf because the hearing was held while he was incarcerated. Finally, he contends that because he poses no risk while incarcerated, there is no need to classify him while incarcerated. Doe's argument, however, ignores the obvious problem that if he is not classified while incarcerated, he may pose a danger upon release prior to being classified.

3. *Conducting hearing by way of video conference.* Doe contends that the board's final classification was improper because the hearing was conducted via video conference, with Doe and his counsel participating remotely from a separate location from the hearing examiner and counsel for the board. Specifically, Doe argues that conducting a final classification hearing by way of video conference exceeded the board's regulatory and statutory authority and violated Doe's State and Federal due process rights.

As an initial matter, we note that the board's enabling legislation and companion regulations do not expressly permit or prohibit classification hearings to be conducted via video conference. They do, however, provide for significant flexibility of procedures. The enabling statute provides: "If an offender requests a hearing . . . , the chair may appoint . . . a hearing officer to conduct the hearing, according to the standard rules of adjudicatory procedure or other rules which the board may promulgate." See G. L. c. 6, § 178L(2), inserted by St. 1999, c. 74, § 2. The regulations further state: "the [board] may . . . develop, implement, and/or amend its policies, procedures, and protocols." 803 Code Mass. Regs. § 1.01. More particularly, the board is authorized to determine "the date, time and place of the hearing," 803 Code Mass. Regs. § 1.09(1) (2004), and the hearing examiner is given the express power to "govern the

conduct of every phase of the hearing, including, but not limited to, the interpretation and construction of 803 [Code Mass. Regs. §] 1.00." 803 Code Mass. Regs. § 1.15 (2002). Additionally, "[i]t is a recognized principle of administrative law that an agency may adopt policies through adjudication as well as through rulemaking. . . . '[T]he choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency.' " *Arthurs* v. *Board of Registration in Med.*, 383 Mass. 299, 312-313 (1981), quoting from *SEC* v. *Chenery Corp.*, 332 U.S. 194, 203 (1947). Here the hearing officer chose to exercise the substantial procedural powers delegated to him by statute and regulation to proceed by way of video conference.

Doe argues, nonetheless, that the regulations implicitly require an offender's "physical presence" at a final classification hearing.[2] We discern no such implied requirement. The board's regulations are more open-ended and more focused on what happens if an offender fails to appear at or attend a scheduled proceeding. For example, the "[f]ailure of the sex offender to appear at the scheduled hearing without good cause shown shall result in the waiver of the right to hearing." 803 Code Mass. Regs. § 1.13(2) (2002). Also for good cause shown, the board may reschedule the hearing at the request of the offender or his representative. The factors the board takes into account in making that determination include "[t]he sex offender's ability to anticipate the circumstances which resulted in his inability to appear" and "[d]elay by the sex offender in notifying the Board of his inability to attend the hearing." 803 Code Mass. Regs. § 1.12(2)(b)-(c) (2002). Given the flexible procedures set out in

---

[2]Doe cites four Federal circuit court cases holding that video conferencing does not satisfy a requirement that an individual be "present." *Valenzuela-Gonzalez* v. *United States Dist. Ct. for the Dist. of Ariz.*, 915 F.2d 1276, 1280 (9th Cir. 1990). *United States* v. *Navarro*, 169 F.3d 228, 239 (5th Cir. 1999). *United States* v. *Lawrence*, 248 F.3d 300, 302-303 (4th Cir. 2001). *United States* v. *Torres-Palma*, 290 F.3d 1244, 1248 (10th Cir. 2002). Doe's reliance on these cases fails for two reasons. First, the board's regulations do not require "presence"; rather, they merely require that the sex offender appear at the hearing. Moreover, these cases hold that the use of video conferencing is inappropriate for criminal arraignments and sentencing, which, unlike Doe's classification as a sex offender, are governed by the Federal Rules of Criminal Procedure.

the regulations and statute, and the express powers given to the hearing officer regarding the conduct of the proceedings, and notwithstanding the consequences resulting from the sex offender's failure to appear at or attend a scheduled hearing, we do not read the regulations as requiring his physical presence at the hearing as opposed to participation by way of video conference. Accordingly, conducting final classification hearings remotely is not inconsistent with the board's enabling statute and companion regulations.

Although the board's ability to conduct hearings by way of video conference is not statutorily precluded, we must determine whether remote participation in a sex offender's classification hearing violates Doe's State and Federal due process rights.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). We consider three factors in determining whether Doe has been afforded sufficient due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including . . . the fiscal and administrative burdens [involved]." *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976).

"Considering the first and second factors of the test, the plaintiff's interest in this case is weighty, and the risks associated with an erroneous classification would result in the dissemination of his registration information to the public. However, the plaintiff's interests must, with appropriate safeguards, be weighed against the board's interests in protecting the public." *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. at 775-776. Generally, the board's regulations "ensure adequate procedural safeguards and do not violate constitutional due process." *Id.* at 777. As the Superior Court judge explained:

> "Doe received notice of the hearing, and an opportunity to be heard. . . . The hearing occurred before an impartial hearing examiner, and Doe was appointed counsel, had the

ability to (and did) file motions prior to and during the hearing, was entitled to (and received) pretrial discovery, and had the opportunity to review the detailed, written final classification decision. . . . In addition, Doe 'was accorded several opportunities to challenge the classification decision' [*ibid.*] by requesting a de novo hearing and subsequently appealing the Examiner's decision to the Superior Court."

Doe, however, argues that he was prejudiced because he could not effectively present and receive evidence during his classification hearing specifically because of video conferencing. Doe relies upon the requirements that "[n]o evidence shall be considered unless it is presented at the hearing" and that "[a] copy of any written submissions shall be offered immediately to all Parties." 803 Code Mass. Regs. §§ 1.19(2), 1.20 (2002). When read in conjunction with the requirements regarding discovery in the board's regulations, we conclude that Doe was not deprived of his ability to present and receive evidence at his hearing. The board's regulations require that the board and a sex offender and his or her counsel disclose any documents that either party "intend[s] to introduce into evidence . . . at least ten business days prior to the scheduled hearing date." 803 Code Mass. Regs. § 1.18(2) (2002). According to the hearing examiner, "[t]he evidence presented in this particular case by the Board consisted solely of documentary evidence . . . provided to [Doe] well in advance of his hearing." Thus, we agree with hearing examiner that "[t]he fact that the hearing was conducted via video conference did not have any effect on his ability to evaluate the evidence."

Doe also argues that he was prejudiced because he could not effectively examine and cross-examine witnesses in a hearing conducted via video conference. Doe suffered no such prejudice. As an initial matter, we note that Doe or his counsel would have had the opportunity, as the board found, to "visually and audibly observe the witness and to cross-examine him." See *United States* v. *Baker,* 45 F.3d 837, 843-844 (4th Cir. 1995) ("Of course, the video conference procedure does not preclude the respondent from confronting and conducting relevant cross-examination of the witnesses. . . . The only question is the

694            79 Mass. App. Ct. 683 (2011)

Doe, Sex Offender Registry Board No. 1 *v.* Sex Offender Registry Board.

extent to which the video conferencing procedure preserves the essence of these rights sufficiently so as to conform with the strictures of due process"). Moreover, insofar as Doe analogizes his rights to cross-examine witnesses in a board hearing to the right of confrontation afforded in a criminal proceeding, Doe's reliance is misplaced. Sex offender registration and classification is not a criminal proceeding, and therefore, Doe had no right to confront witnesses at his hearing under either the Sixth Amendment to the United States Constitution or art. 12 of the Massachusetts Declaration of Rights. Cf. *Commonwealth* v. *Given*, 441 Mass. 741, 746 n.8 (2004) (concluding that there is no right to confront witnesses in hearing to civilly commit sex offender as a sexually dangerous person). Ultimately, Doe's argument concerning his diminished ability to examine and cross-examine witnesses at his hearing must necessarily fail because neither he nor the board called any witnesses at the hearing. Accordingly, Doe cannot successfully demonstrate he was harmed in any way by the effect of video conferencing on his ability to examine and cross-examine witnesses.

Similarly, Doe's argument that he was denied due process because the hearing examiner must make credibility determinations based on remote testimony observed on a video screen must also fail. As explained above, the hearing examiner would have been able to visually and audibly evaluate the witness. Although we recognize that video conferencing "is not the same as actual presence, and it is to be expected that the ability to observe demeanor . . . may be lessened in a particular case by video conferencing," there is no indication that this difference was meaningful here. *Edwards* v. *Logan*, 38 F. Supp. 2d 463, 467 (W.D. Va. 1999). Most importantly, absent any witness testimony at Doe's hearing, the hearing examiner was not required to make any credibility determinations.

Finally, we address the third *Mathews* factor weighed in determining the sufficiency of due process, "the Government's interest, including . . . the fiscal and administrative burdens [that the additional or substitute procedures would entail]." *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. at 775, quoting from *Mathews* v. *Eldridge*, 424 U.S. at 335. When reviewing an agency decision,

we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14(7). Accordingly, we acknowledge the hearing examiner's finding, particularly given the absence of any conflicting evidence, that conducting hearings remotely conserves agency resources[3] and increases its productivity: "The video conference hearings eliminate the travel expenses incurred by the hearing examiner and the Board's attorney when traveling to the various hearing sites spread throughout eastern and western Massachusetts. Moreover, video conference hearings increase the productivity of the hearing examiner and Board's attorney by eliminating the time lost to travel." Given the number of registration and classification proceedings, and the critical importance of timely completion of these proceedings, these benefits are significant. See *Mathews* v. *Eldrige, supra* at 348 ("the [g]overnment's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed"); *United States* v. *Baker*, 45 F.3d at 847 ("fiscal and administrative concerns are properly taken into account" in allowing video conferencing of civil commitment proceedings). Accordingly, the government's interest in conducting hearings remotely is significant.

Balancing each of the *Mathews* factors discussed above, we conclude that the board's classification procedures here complied with due process despite being conducted via video conference. Although there were significant liberty and privacy interests at stake, the Commonwealth established that the procedures utilized were sufficient to minimize the risk of the erroneous deprivation of those rights. Additionally, the Commonwealth's financial and administrative interests in utilizing video conferencing justified their use in these proceedings. Finally, there has been no showing that proceeding via video conferencing in any way increased the likelihood of an erroneous classification in this case.

*Conclusion.* The board's conducting Doe's final classification

---

[3]The hearing examiner found that, while there are some expenses associated with the technology, "the Board believes that the savings will be greater than these costs."

hearing both while Doe was incarcerated and via video conference did not violate any of Doe's constitutional or statutory rights. Accordingly, the board's decision classifying Doe as a level three sex offender is affirmed.

*So ordered.*