780                                    450 Mass. 780 (2008)

Doe, Sex Offender Registry Board No. 8725 *v*. Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 8725 *vs*. SEX
OFFENDER REGISTRY BOARD.

Suffolk. November 8, 2007. - March 14, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Due Process of Law,* Sex offender, Retroactive application of statute. *Evidence,* Sex offender. *Statute,* Retroactive statute.

In the circumstances of a constitutional challenge to the application of the sex offender registration statute, G. L. c. 6, §§ 178C-178Q, to the plaintiff, based solely on the fact that he pleaded guilty to rape twenty-four years prior to the advent of that law, this court concluded that the law must be considered retroactive, in that it attached new legal consequences to events that occurred before its enactment. [786-787]

In an action for judicial review of a decision of the Sex Offender Registry Board (board) — rendered without a hearing — that the plaintiff had a mandatory, lifelong obligation to register annually, solely by virtue of his conviction of rape twenty-four years prior to the enactment of the sex offender registration law, G. L. c. 6, §§ 178C-178Q, a Superior Court judge erred in denying the plaintiff's motion for judgment on the pleadings, where, although nonpunitive retroactive regulation was not unconstitutional per se, and notwithstanding the compelling public interest in protecting the vulnerable members of our communities from sexual offenders, application of that statute to the plaintiff was unreasonable, given the inequities wrought by imposing on him an extensive, permanent duty abrogating substantial rights without any opportunity for classification on an individualized basis according to his risk of reoffense and degree of dangerousness, especially in light of the fact that his demonstrable record since his conviction contained no evidence whatsoever of predatory sexual acts characterized by repetitive or compulsive behavior; therefore, so as to avoid a violation of the plaintiff's substantive and procedural due process rights under the Massachusetts Declaration of Rights, this court remanded the case to the board for an evidentiary hearing. [787-793]

CIVIL ACTION commenced in the Superior Court Department on May 20, 2004.

The case was heard by *Charles T. Spurlock*, J., on a motion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Lawrence P. Murray* for the plaintiff.

*Daniel A. Less*, Special Assistant Attorney General, for the defendant.

CORDY, J. On September 13, 1979, the plaintiff, John Doe, then twenty-two years of age, tendered an *Alford* plea, see *North Carolina* v. *Alford*, 400 U.S. 25 (1970), to a charge of rape. G. L. c. 265, § 22.[1] He was sentenced to a two-year term of probation which he completed without incident on September 9, 1981. Twenty-two years later, on November 10, 2003, the Sex Offender Registry Board (board) notified Doe that pursuant to G. L. c. 6, §§ 178C-178Q, the sex offender registration law (registration law),[2] it was reviewing his case to make a recommendation regarding his duty to register with the board and his classification level. See G. L. c. 6, § 178L (1); 803 Code Mass. Regs. § 1.01 (2002). Doe was given thirty days to submit documentary evidence "relative to his risk of reoffense, the degree of dangerousness posed to the public and his duty to register." 803 Code Mass. Regs. § 1.05(1) (2002). Doe submitted documentary evidence to the board to the effect that he had established a stable life in the community, with a strong network of family and friends, and that he had been married for twenty-one years, had raised three accomplished children, and had maintained steady employment with increasing levels of responsibility over the years. Doe had not been convicted of any crime since his 1981 discharge from probation.

On December 31, 2003, the board recommended that Doe be required to register as a level one sex offender. A level one classification is the classification given to sex offenders whose risk

---

[1]"Under *Alford*, a defendant who professes innocence may nevertheless plead guilty and 'voluntarily, knowingly and understandingly consent to the imposition of a prison sentence,' if the State can demonstrate a 'strong factual basis' for the plea." *Commonwealth* v. *DelVerde*, 398 Mass. 288, 297 (1986), quoting *North Carolina* v. *Alford*, 400 U.S. 25, 37-38 (1970). "Whether the defendant admits to the crime in open court, or the Commonwealth shows the factual basis for the plea, a court may not convict unless there are sufficient facts on the record to establish each element of the offense." *Commonwealth* v. *DelVerde, supra.*

[2]The applicable version of the sex offender registration statute being reviewed is set forth in St. 1999, c. 74, § 2, as amended through St. 2003, c. 77.

of reoffense is low.[3] Doe was informed of his right to request an evidentiary hearing to challenge his classification and registration obligation. See G. L. c. 6, § 178L (1); 803 Code Mass. Regs. §§ 1.06(1), 1.07(1) (2002). On January 11, 2004, Doe requested a hearing, and the matter was assigned to a hearing examiner.[4] See G. L. c. 6, § 178L (1) (*c*); 803 Code Mass. Regs. § 1.07(2) (2002). The board then filed a motion for a required finding that Doe be classified as a level one offender (without a hearing) because as a matter of law, a person previously convicted of a sexually violent offense (such as rape)[5] was required to register regardless of whether he posed any risk of reoffense or danger to the public, and a level one classification was the least intrusive designation that Doe could obtain under the registration law. The board acknowledged that, although in some circumstances, it could relieve a sex offender of the duty to register and could remove registration information from

[3]Pursuant to G. L. c. 6, § 178K (2) (*a*), the Sex Offender Registry Board (board) shall give a level one designation to a sex offender "[w]here the board determines that the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability [of information pertaining to the offender]." See 803 Code Mass. Regs. § 1.03 (2002) (defining level one offender). Further, "[i]n such [a] case, the board shall transmit the registration data and designation to the police departments in the municipalities where such sex offender lives and works and attends an institution of higher learning . . . and where the offense was committed and to the Federal Bureau of Investigation. The police shall not disseminate information to the general public identifying the sex offender where the board has classified the individual as a level 1 sex offender. The police and the board may, however, release such information identifying such sex offender to the department of correction, any county correctional facility, the department of youth services, the department of social services, the parole board, the department of probation and the department of mental health, all city and town police departments and the Federal Bureau of Investigation." G. L. c. 6, § 178K (2) (*a*). See 803 Code Mass. Regs. §§ 1.27(2), 1.28 (2002).

[4]Pursuant to 803 Code Mass. Regs. § 1.10(1) (2002), "[t]he hearing shall be a *de novo* review and be limited to determining by a Preponderance of the Evidence the sex offender's duty to register and his Final Classification. The Board shall bear the burden of proof." See 803 Code Mass. Regs. § 1.38(4) (2002) (at hearing, "all relevant evidence is evaluated anew by a disinterested Hearing Examiner"). "The Hearing Examiner's decision shall be the final Sex Offender Registry Board decision. For purposes of judicial review, this decision shall be considered the final agency action." 803 Code Mass. Regs. § 1.23 (2002).

[5]The crime of rape, G. L. c. 265, § 22, is included in the definitions of both "[s]ex offense" and [s]exually violent offense" under G. L. c. 6, § 178C.

the registry,[6] such relief could not be granted where, as here, the offender had been convicted of a sexually violent offense. See G. L. c. 6, § 178K (2) (*d*).

In response to the board's motion, the hearing examiner issued an order granting Doe leave to file a rebuttal statement addressing only whether the conviction information presented by the board was accurate, whether he was an adult at the time of his offense, and whether the facts otherwise suggested any exception to the registration requirement of G. L. c. 6, § 178K (2) (*d*). The order further stated that if, as an adult, Doe had committed a sexually violent offense, annual registration as a sex offender was mandatory pursuant to § 178K (2) (*d*).

On April 20, 2004, Doe submitted a rebuttal statement in which he claimed that his duty to register was not automatic by virtue of his conviction of a sexually violent offense. In particular, Doe took issue with Section D of the board's "Classification Worksheet," which stated that "[o]ffender currently presents some risk to reoffend and a degree of dangerousness."[7] Doe asserted that there was no basis in the record for this conclusion,

---

[6]In those instances where an offender seeks to be relieved of a registration obligation, "[t]he board may, upon making specific written findings that the circumstances of the offense in conjunction with the offender's criminal history do not indicate a risk of reoffense or a danger to the public and the reasons therefor, relieve such sex offender of any further obligation to register, shall remove such sex offender's registration information from the registry and shall so notify the police departments where said sex offender lives and works . . . and where the offense was committed and the Federal Bureau of Investigation." G. L. c. 6, § 178K (2) (*d*). The offender has the burden of proof in establishing that he comes within the provisions of § 178K (2) (*d*). See 803 Code Mass. Regs. § 1.37A (2002) (relief from registration obligation).

[7]A "Classification Worksheet" is "[a] form developed and approved by the Board that reflects the Recommendation Process, shows the foundation for each recommended registration and classification determination, and indicates the Board's recommended registration and classification determination for each offender." 803 Code Mass. Regs. § 1.03. As part of the registration process, the board is required to "review the information in an offender's case file prior to completing the Classification Worksheet." 803 Code Mass. Regs. § 1.39(3) (2002). "Since, in requesting [a] hearing, the offender shall be deemed to have rejected the Board's recommendation, and, to ensure that the sex offender is provided an additional opportunity to present any relevant evidence bearing on his obligation to register and classification level, the Hearing Examiner shall not be bound by the Board's Recommendation Process, Classification Worksheet, or recommended finding as described in 803 [Code

and that he had a right to challenge it at a hearing. Doe further argued that if G. L. c. 6, § 178K, mandated that he register solely because of his prior conviction, then the application of the statute to him violated his due process rights under the Massachusetts Declaration of Rights.

Notwithstanding Doe's request for a hearing, none was held. By order dated April 22, 2004, the hearing examiner directed Doe to register with the board as a level one sex offender, in accordance with G. L. c. 6, § 178K (2) (*a*). At the time of the order, there was no evidence that Doe's behavior during the intervening decades since his plea indicated that he posed any risk of reoffense or danger "to the vulnerable members of our communities" that the registration law was intended to protect,[8] a circumstance essentially acknowledged by the hearing examiner. The examiner concluded, however, that because the crime of rape was specified as a "[s]exually violent offense" under G. L. c. 6, § 178C, Doe could be granted no relief from his obligation to register, irrespective of any showing that he posed no such risk. See G. L. c. 6, §§ 178E (*e*), 178G, 178K (2) (*d*).

Doe filed a complaint for judicial review of the board's decision in the Superior Court, asserting that his substantive and procedural due process rights under the Massachusetts Declaration of Rights were violated because he was not afforded a hearing to challenge the board's classification recommendation, and there was no evidence to suggest that he posed a danger to anyone so as to necessitate registration. Doe's motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), was denied and he was ordered to register as a level one sex offender. Doe filed a timely notice of appeal, and we transferred the case from the Appeals Court on our own motion. For the reasons that follow, we agree that the board's determination that Doe had a mandatory obligation to register annually, solely by virtue of his prior conviction, violates Doe's due process rights as protected by the Massachusetts Declara-

---

Mass. Regs. §] 1.39. Rather, the Hearing Examiner shall base his decision on the totality of all the relevant evidence introduced at the offender's individualized hearing . . . ." 803 Code Mass. Regs. § 1.38(4).

[8]The stated purpose of the sex offender registration law, G. L. c. 6, §§ 178C-178Q, is to protect "the vulnerable members of our communities from sexual offenders." St. 1999, c. 74, emergency preamble.

tion of Rights.[9] Consequently, we vacate and remand the case to the board to allow Doe to present evidence that he poses no risk to reoffend and thus should not be required to register.

*Discussion.* The genesis of the duty to register traces back to 1996, when the Legislature first enacted a registration law. G. L. c. 6, §§ 178C-178O. St. 1996, c. 239, § 1. The registration requirements and notification provisions were subsequently held to be unconstitutional and its implementation enjoined in 1997. *Doe* v. *Attorney Gen.*, 426 Mass. 136 (1997). The registration law was rewritten in 1999, St. 1999, c. 74, § 2, see note 2, *supra*, and now applies to all persons convicted of certain sex offenses, including persons convicted long before its enactment.[10] Specifically, it applies to persons convicted of a designated sex offense whose "incarceration or parole or probation" had been completed "on or after August 1, 1981." G. L. c. 6, § 178C. Because Doe's probation ended on September 9, 1981, he is subject to the requirements of the 1999 law.

As the board acknowledges, it has authority to relieve some sex offenders of the obligation to register if they establish "that the circumstances of the[ir] offense [and] criminal history do not indicate a risk of reoffense or a danger to the public." G. L. c. 6, § 178K (2) (*d*). But the 1999 statute mandates that those who have committed a "[s]exually violent offense," which includes rape (G. L. c. 6, § 178C), may never be excused from registration; the obligation is lifetime in duration. G. L. c. 6, §§ 178G, 178K (2) (*d*). Thus, Doe was not permitted to challenge the board's determination that he posed a risk of reoffense to vulnerable offenders of our communities. This case presents the circumstance we noted, but did not need to decide, in *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750 (2006) (*Doe No. 1211*), where the record would establish "that Doe poses no risk at all [of reoffense]" and the application of the statutory provisions that

---

[9]Doe raised due process claims only under the Massachusetts Constitution. "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of its Declaration of Rights are the provisions in our Constitution comparable to the due process clause of the Federal Constitution." *Pinnick* v. *Cleary*, 360 Mass. 1, 14 n.8 (1971).

[10]Statute 1999, c. 74, § 2, was amended through St. 2003, c. 77, and again by St. 2004, c. 149, § 13. See note 2, *supra*.

permanently foreclose his being relieved of the duty to register may be "constitutionally vulnerable." *Id.* at 762.[11]

1. *Retroactivity.* In mentioning the registration law's constitutional vulnerability in *Doe No. 1211*, we did not distinguish between its retrospective and prospective application. However, retroactive statutes raise particular constitutional concerns. "The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 266 (1994). This risk is acute in the context of people who have committed crimes that have a sexual component, and who are frequently the target of public ire and scorn.

Inquiry into whether the registration law has been unconstitutionally applied to Doe begins with an examination of whether the registration law is retroactive in its application. We confronted a similar challenge to the application of the sexually dangerous person act, G. L. c. 123A (SDP act), to persons convicted of sex offenses prior to the SDP act's amendment in 1999. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 497-499 (2000). We concluded that although a prerequisite for civil commitment under the SDP act was the commission of a sexual offense, and convictions occurring prior to the enactment of the SDP act could be used to satisfy that prerequisite, the statute's application was nonetheless not retroactive. *Id.* at 498. In reaching this conclusion, we held that the "requisite sexual offense convictions determine only the persons eligible for potential civil commitment, and [are] not the basis for commitment." *Id.* The basis

---

[11]In *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750 (2006), we held that requiring an individual who has committed a sexually dangerous offense to register as a level one sex offender did not violate State due process protections on its face. *Id.* at 759. Thus, to the extent Doe raises a facial challenge to the law, that challenge fails.

We did leave open the possibility of the "as applied" challenge that Doe raises in this case: "[W]hether an offender who is found by an examiner to pose absolutely no risk to children can, consistent with constitutional protections, be compelled to register, may be left for decision to another day." *Id.* at 762. Indeed, "if the record established that Doe poses no risk at all, then the statute and regulation, considered on an as applied basis, might be constitutionally vulnerable." *Id.*

of the commitment or, as we stated, "the conduct triggering the statute's application" was the person's "current mental condition" and consequent present sexual dangerousness, thereby making the application of the SDP act prospective. *Id.*[12] In other words, the enactment of G. L. c. 123A did not attach "new legal consequences to events completed before its enactment." *Id.*, quoting *Landgraf* v. *USI Film Prods.*, *supra* at 270.

The same could be said of the registration law if a conviction for sexual offenses predating its enactment subjected a person only to potential registration and classification, or even a presumption of registration, with the ultimate registration requirement tied to an assessment (by the board) of the person's current level of dangerousness and risk of reoffense. With respect to some sex offenders, that is how the law operates. See ·G. L. c. 6, § 178K (2) (*d*). See also G. L. c. 6, § 178E (*c*), (*f*). However, with respect to Doe, his conviction of rape, a "[s]exually violent offense" as defined by G. L. c. 6, § 178C, makes the statutory presumption of risk conclusive. G. L. c. 6, §§ 178C, 178G, 178K (2) (*d*). The sole basis for the requirement that Doe register, therefore, is the fact that he pleaded guilty to rape in 1979. Thus, in Doe's case, the registration law attaches new legal consequences to events that occurred before its enactment, and must be considered retroactive for the purposes of further constitutional inquiry. See *Commonwealth* v. *Bruno*, *supra* at 498-499 (discussing "new consequence" formulation of retroactivity).

A retroactive statute that imposes an additional punishment on past, and already punished, criminal behavior undoubtedly runs afoul of double jeopardy prohibitions.[13] We have said, however, that the registration law is generally regulatory rather

---

[12]The mental condition and present sexual dangerousness determinations under G. L. c. 123A are of course made after a trial, see G. L. c. 123A, § 14, at which the person whom the Commonwealth seeks to commit is afforded almost all of the rights afforded defendants in criminal cases. See generally *Commonwealth* v. *Bruno*, 432 Mass. 489, 507-511 (2000).

[13]"Although not expressly included in the Massachusetts Declaration of Rights, [we have] long recognized a State common-law and statutory prohibition against double jeopardy." *Powers* v. *Commonwealth*, 426 Mass. 534, 537 n.5 (1998). See *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974); G. L. c. 263, § 7. Additionally, "[c]ertain double jeopardy concepts are no doubt embraced within the Massachusetts Constitution's due process of law provisions . . . ." *Commonwealth* v. *Forte*, 423 Mass. 672, 674 (1996).

than punitive. See *Commonwealth* v. *Bruno, supra* at 499-502; *Opinion of the Justices,* 423 Mass. 1201, 1224-1227 (1996). See also *Powers* v. *Commonwealth,* 426 Mass. 534, 538-539 (1998), quoting *Hudson* v. *United States,* 522 U.S. 93, 99 (1997) (in determining whether civil sanctions constitute punishment, we must consider whether law was intended to be civil and, if so, whether statutory scheme was "so punitive either in purpose or effect" as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty").[14] While nonpunitive retroactive regulation is not unconstitutional per se, it nonetheless raises due process concerns. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 189-190 (1978).

Retroactive laws must meet the test of "reasonableness" to comport with State constitutional due process requirements. *Id.* at 190. "[O]nly those retroactive statutes 'which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional.' " *St. Germaine* v. *Pendergast,* 416 Mass. 698, 702 (1993), quoting *Leibovich* v. *Antonellis,* 410 Mass. 568, 577 (1991). The burden is on the challenger to make a factual showing that the statute is irrational in its application. Ultimately, the "principal inquiry — as to reasonableness — is essentially a review of whether it is equitable to apply the retroactive statute against the plaintiffs." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 191.

In determining whether the application is equitable — and thus whether the regulation is reasonable — we examine the statute from three perspectives: "the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights . . . affected retroactively; and the extent or scope of the statutory effect or impact." *Id.*[15]

2. *The nature of the public interest.* In contrast to *American*

---

[14]We do, however, share the concern expressed by Justice Souter when he discussed the Alaska Sex Offender Registration Act, 1994 Alaska Sess. Laws c. 41, in *Smith* v. *Doe,* 538 U.S. 84, 109 (2003) (Souter, J., concurring in the judgment): "The fact that the Act uses past crime as the touchstone, probably sweeping in a significant number of people who pose no real threat to the community, serves to feed suspicion that something more than regulation of safety is going on; when a legislature uses prior convictions to impose burdens that outpace the law's stated civil aims, there is room for serious argument that the ulterior purpose is to revisit past crimes, not prevent future ones."

[15]Our analysis of retroactive civil regulation often comes in the context of

*Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 192-193, and *Leibovich* v. *Antonellis, supra* at 577-578, where the court was required to consider what *could* or *may* have been the motivating reasons for the Legislature to enact the statutes that were at issue, in the case of the registration law, the Legislature was explicit regarding the public interest it was seeking to protect and advance. The purpose behind the registration law, as stated in the emergency preamble to its revision in 1999, is to protect "the vulnerable members of our communities from sexual offenders." See note 8, *supra.* In particular, the Legislature found "the danger of recidivism posed by sex offenders, *especially sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior*, to be grave and that the protection of the public from *these sex offenders* is of paramount interest" (emphasis added). St. 1999, c. 74, § 1. It also found that "law enforcement agencies' efforts to protect their communities" from sex offenders are "impaired by the existing lack of information known about sex offenders who live within their jurisdictions"; that the registration of sex

---

the retroactive creation or expansion of tort liability, or the retroactive imposition of taxes. See *Pielech* v. *Massasoit Greyhound, Inc.*, 441 Mass. 188, 195 (2004) (expansion of employer liability for employment discrimination based on religious beliefs could not be applied retroactively); *St. Germaine* v. *Pendergast*, 416 Mass. 698, 703-704 (1993) (retroactive application of statute imposing liability on single-home construction permit holder for injury to worker unreasonable and did not comport with due process); *Leibovich* v. *Antonellis*, 410 Mass. 568, 578-580 (1991) (statute authorizing parents to bring claims for loss of consortium of child applied retroactively); *Keniston* v. *Assessors of Boston*, 380 Mass. 888, 904-905 (1980) (four-year retroactive imposition of tax unconstitutional, time period "oppressive and unjust"). The three-part test is, therefore, largely tailored to cases involving retroactive financial liabilities. The same considerations, however, should be applicable here. As art. 10 of the Massachusetts Declaration of Rights states, "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing Laws." Liberty, like property, therefore, must be protected from unreasonable infringement by retroactive laws. Cf. *Immigration & Naturalization Serv.* v. *St. Cyr*, 533 U.S. 289, 320-323, 326 (2001) (construing Federal statute that eliminated relief-from-deportation provision in prior law for resident aliens convicted of aggravated felonies as operating prospectively only, in light of new disabilities imposed by new law on aliens who had previously pleaded guilty to felonies); *Olatunji* v. *Ashcroft*, 387 F.3d 383, 389-396 (4th Cir. 2004) (same law, same conclusion as applied to resident alien who previously pleaded guilty to theft of government property).

offenders is a proper exercise of police powers *"regulating pre-sent and ongoing conduct*, which will provide law enforcement with additional information critical to preventing sexual victim-ization"; and that the "registration by sex offenders is neces-sary in order to permit classification of such offenders on *an individualized basis according to their risk of reoffense and degree of dangerousness"* (emphasis added). *Id.*

There is no dispute that "[s]ex offenders are a serious threat in this Nation," *Connecticut Dep't of Pub. Safety* v. *Doe*, 538 U.S. 1, 4 (2003), quoting *McKune* v. *Lile*, 536 U.S. 24, 32 (2002) (plurality opinion), and that the public interest in protect-ing vulnerable members of the community from sexual preda-tors is a compelling one. But it is nearly impossible to conclude that this interest and the statute's defined purposes are served by imposing, without any opportunity for classification "on an indi-vidualized basis," a registration requirement on a person who committed a single sexual offense more than twenty-four years before the board's imposition of the requirement, and, whose demonstrable record since that time contains no evidence what-soever of "predatory [sexual] acts characterized by repetitive and compulsive behavior."[16]

3. *The nature of the rights affected.* The rights affected by the registration requirement, while not fundamental, are never-theless substantial.[17] As applied, the registration law requires Doe to register annually and requires the Commonwealth annu-

---

[16]As we noted in *Pielech* v. *Massasoit Greyhound, Inc., supra* at 195, the inquiry is not only whether the Legislature's stated public interest is important, but also whether that interest is reasonably served by the statute. There, the court did not question "whether there [was] an important public interest at stake in prohibiting discrimination against persons for their sincerely held religious beliefs — there obviously [was] such an interest." *Id.* Instead, the court asked whether that interest was reasonably achieved by the retroactive application of the legislation, and concluded that it was not. *Id.*

[17]We have noted in the context of civil statutes that, "[g]enerally, persons challenging a retroactive statute must show that they acted in reasonable reli-ance upon the previous state of the law." *Leibovich* v. *Antonellis, supra* at 578. But see *St. Germaine* v. *Pendergast, supra* at 703-704 (retroactive ap-plication of statute imposing new obligations and potential tort liability on defendant's past conduct in obtaining and working under permit for construc-tion of one single-family home violates defendant's due process rights without showing of actual reliance on law as it had existed). While an argument that Doe reasonably relied on the state of the law in 1979 (when there was no

ally to inform local *and* Federal law enforcement officers that, in its· view, Doe presents a risk of committing a sex offense, despite his conduct between 1979 and the present that demonstrates otherwise. *Doe* v. *Attorney Gen.,* 426 Mass. 136, 144 (1997). See *Roe* v. *Attorney Gen.,* 434 Mass. 418, 453 (2001) (Marshall, C.J., concurring in part and dissenting in part). If Doe is forced to register, even though his information would not be released publicly, he would nevertheless be "singled out and brought to the attention of the law enforcement agencies in the municipalities in which [Doe] live[s] and work[s]." *Id.* at 450 (Marshall, C.J., concurring in part and dissenting in part). Thus, in the eyes of those entrusted with enforcing the law, he would be forever viewed as a threat to the most vulnerable members of the Commonwealth, left to suffer the consequences of such an unsavory designation.[18]

Although Doe was not afforded "any opportunity to show

registration law) is not persuasive here, that fact alone is not dispositive. An individual, like Doe, who has committed a crime, served his sentence, and reformed his life has a justified expectation that he will not at some time in the distant future be automatically branded as a public danger in the eyes of law enforcement, and required annually to register as such, without consideration of his behavior since 1979. Cf. *Keniston* v. *Assessors of Boston, supra* at 904 (in context of retroactive tax legislation, period of retroactivity cannot extend so far back as to be oppressive and unjust); *Olatunji* v. *Ashcroft, supra* at 396 (expressly rejecting idea that reliance on old statutory framework required before retroactivity will be considered unconstitutionally repressive in context of deportation for past crimes). "To be reminded again and again of an offense years past . . . that does not menace any vulnerable person now but that is swept into a grim, categorized term, 'sex offense,' would not be seen by most Americans as a minimal imposition." *Roe* v. *Attorney Gen.,* 434 Mass. 418, 452 (2001) (Marshall, C.J., concurring in part and dissenting in part).

[18]"[I]t is the dissemination to law enforcement officials of a government-endorsed list of persons who in the eyes of the State are at risk of reoffending that raises due process concerns. . . . Dissemination· of such data signals law enforcement officials to focus their attention on these persons simply because the Legislature has, as a general matter, labeled them public dangers." (Citation omitted.) *Roe* v. *Attorney Gen., supra* at 443 (Cowin, J., concurring). See *id.* at 449, 453-454 (Marshall, C.J., concurring in part and dissenting in part). See also *Doe* v. *Attorney Gen.,* 426 Mass. 136, 144 (1997) (person has protected liberty and privacy interests implicated by requirement to register and notify police of sex offender status; most important factor involved is "the statutory branding of him as a public danger, a sex offender. The statutory classification implicitly announces that, in the eyes of the State, [he] presents a risk of committing a sex offense").

what he likely could: that he is not a danger to children or other vulnerable persons," he would now be obligated to register or face criminal penalties. *Id.* at 449 (Marshall, C.J., concurring in part and dissenting in part). We have noted that such registration presents an "importantly distinct kind of constitutional danger," because it "forces an action on the person required to register. It is a continuing, intrusive, and humiliating regulation of the person himself." *Doe* v. *Attorney Gen., supra* at 149 (Fried, J., concurring). Ultimately, Doe would be required to acquiesce to the State's determination that he poses a continuing threat of reoffense, and regularly provide the board with his home and work addresses. He would be forced to say annually, and without regard for the past one-quarter century, "I am a sex offender, and here is where to find me." Such a requirement would fundamentally change the nature of the relationship between Doe and State, and would be "in principal quite alien to our traditions." *Doe* v. *Attorney Gen.*, 430 Mass. 155, 162 (1999), quoting *Doe* v. *Attorney Gen.*, 426 Mass. 136, 150 (1997) (Fried, J., concurring).[19]

4. *The extent of the abrogation of the asserted rights.* The burden imposed by the retroactive statute must be reasonable in scope and extent. In making that determination, we have asked whether the imposition is short-term, or of infinite duration. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 196 (1978). We have also considered whether the scope of the statute is narrowly drawn to treat the problem perceived by the legislature. *Leibovich* v. *Antonellis*, 410 Mass.

---

[19]The Supreme Court of Hawaii described a similar lifetime registration requirement as follows: "The effects of lifetime registration are similar to the effects of . . . lifetime surveillance . . . as described by the Supreme Court in *Weems* v. *United States*, 217 U.S. 349, 366 (1910): 'His prison bars and chains are removed, it is true, . . . but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicile without giving notice to the "authority immediately in charge of his surveillance;" and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him . . . .' " *State* v. *Guidry*, 105 Haw. 222, 229 (2004). Stated differently, "[t]he registration requirement imposes unending governmental regulation of basic life activities *despite the completion of, and following any criminal sentence*" (emphasis in original). *Id.*

568, 579-580 (1991). *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra.* Here, the registration requirement is properly viewed as a "continuing, intrusive, and humiliating regulation of the person himself." *Doe* v. *Attorney Gen., supra* at 149 (Fried, J., concurring). It is imposed yearly, without exception, and in Doe's case, it "shall never be terminated." G. L. c. 6, § 178G. "Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation . . . . However plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation." *Smith* v. *Doe,* 538 U.S. 84, 117 (2003) (Ginsburg, J., dissenting).

*Conclusion.* When considering the retroactive application of civil statutes, we balance "opposing considerations." *Leibovich* v. *Antonellis, supra* at 577, quoting *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 189-190. Here, the requirements the registration law would impose on Doe are extensive and permanent. Moreover, if Doe can establish that he poses neither a risk of reoffense nor a danger to the communities the law was intended to protect, the imposition of the registration law's requirements on him would not further the law's substantial and important purposes. Consequently, the retroactive imposition of the registration requirement without an opportunity to overcome the conclusive presumption of dangerousness that flows solely from Doe's conviction, violates his right to due process under the Massachusetts Constitution.

Doe must be granted the hearing he has requested, in accordance with the procedure set forth in G. L. c. 6, § 178L, where he will have the opportunity to demonstrate that he neither poses a risk of reoffense nor is a current danger to vulnerable members of our communities.

The Superior Court decision is vacated. The case is remanded to the board for an evidentiary hearing.

*So ordered.*