SUPERIOR COURT 
 
 JOHN DOE NO. 21638 vs. SEX OFFENDER REGISTRY BOARD

 
 Docket:
 2019-3767
 
 
 Dates:
 March 8, 2022
 
 
 Present:
 Paul D. Wilson Justice of the Superior Court
 
 
 County:
 
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PETITIONER’S MOTION FOR JUDGMENT ON THE PLEADINGS
 
 

             In recent years, the Defendant Sex Offender Registry Board (the “SORB”) has sometimes found that a sex offender poses no risk of re-offense and no danger to the public, but nonetheless the SORB requires that offender to register with the SORB as a Level 1 offender, the lowest level. This counter-intuitive result is mandated, the SORB believes, by G.L. c. 178K(2)(d), which the SORB interprets as requiring anyone who commits a violent sexual offense, or an offense against a child victim, to remain on the registry forever. In such cases, if the offender appeals that administrative decision to this court, judges of the Superior Court have regularly overturned the SORB’s decision and relieved the offender of the obligation to register, finding that the offender’s due process rights are violated by requiring registration under those circumstances.
            Petitioner in this case seeks that very result, but in a slightly different factual setting. In this case, a member of the SORB, who is a psychologist, found that Petitioner “now presents no cognizable risk to reoffend,” but she did so in a preliminary classification decision rather than in a final classification decision after a hearing. The primary question raised by this appeal is
 
                                                            -1-
 
whether I can follow the common Superior Court practice of relieving a petitioner who is found to “present[] no cognizable risk to reoffend” of his obligation to register if that finding is made in a preliminary classification. I conclude that, once the SORB concluded that Petitioner posed no cognizable risk to reoffend, the Massachusetts Declaration of Rights required that he be relieved of his obligation to register. Even if that were not so, Petitioner is entitled to prevail in this appeal for a second, independent reason. The SORB’s post-hearing final classification decision – that the Petitioner must register as a Level 1 offender – is not supported by substantial evidence and is arbitrary and capricious.
Background
            The following facts are taken from the SORB’s final classification decision dated November 12, 2019 (the “Decision”), except for a few facts that I place in parentheses and cite to the record before the SORB. I reserve for discussion in the Analysis section a few details about testimony at the administrative hearing.
            Petitioner committed his one sex offense in 1983, when he was 18 years old. He was working as a door-to-door salesman at that time.  (Although the Decision did not mention how he came to that position, Petitioner’s personal statement, presented at the hearing, described his “youthful, impulsive decision” to leave his home in Baltimore to join a group selling home products around the country -- a group that turned out to be a scam, forcing its young salespeople to live five or six to a room in cheap hotels and isolating them from other people, barely feeding them, plying them with alcohol and drugs, keeping all the money they earned through their sales, and encouraging them to steal. Record Appendix (“RA”) at 113-115.)
            Petitioner’s victim discovered him in her house, attempting to open her daughter’s toy safe. Petitioner told the victim that he needed $100 to go home. He threatened the victim and
 
                                                            -2-
 
then raped her vaginally, and threatened her again afterwards. On his way out, Petitioner stole the victim’s wallet, which contained $30. When interviewed by the police on the day that the victim reported the rape, Petitioner admitted to the rape and the theft.
            Petitioner had been arrested the day before this interview for breaking into a different house, stealing a check, forging it, and giving it to his sales-crew boss. Three months after being indicted, Petitioner pleaded guilty to aggravated rape, two counts of breaking and entering, and forging and uttering. For the aggravated rape, he was sentenced to 9 to 12 years in state prison, with concurrent and slightly shorter sentences for the other crimes. Petitioner served five and one-half years of his sentence and was released in July 1989. He successfully completed his parole in 1993.
            Since then, Petitioner has had very little contact with the criminal justice system. In 1993, 1994, and 1999, he was charged with motor vehicle violations, twice for attaching the wrong plates to a motor vehicle, twice for compulsory insurance violations, once for operating after his license was suspended, and once for receiving stolen property. He received fines, a continuance without a finding, and a “guilty filed” for these various offenses. In 2001, he was given a two-year suspended sentence for larceny. That was his last criminal charge until, in a preface to today’s proceedings, he was charged in December 2018 for failing to register as a sex offender. (Although the Decision did not mention this fact, the SORB Member who undertook his preliminary classification noted that Petitioner was unaware of his obligation to register as a sex offender. AR 165. This is not surprising, because his release from custody and his completion of parole predated the Sex Offender Registry Law.)
            The failure to register charge was dismissed, but the SORB began proceedings to add Petitioner to its sex offender registry. SORB member Laurie Humbert, a psychologist,
 
                                                            -3-
 
performed a preliminary classification. In that document, SORB member Humbert stated, “While not diminishing the seriousness of his governing sex offense, given its circumstances more than 35 years ago, his 20+ years of lawful behavior, his age and stability, I find that [Petitioner] now presents no cognizable risk to reoffend.” AR 165. Nonetheless, she decided on a Level 1 classification, but only because, “as he was convicted of aggravated rape, he is ineligible by statute for relief.” AR 165. Having been ordered to register as a Level 1 offender even though he presented no cognizable risk, Petitioner sought a hearing, which the SORB then scheduled before a Hearing Examiner.
            As the Decision noted, at the time of that hearing in 2019, “With no further sex offenses or non-sexual violent offenses, the Petitioner has nearly 30 years of offense-free time in the community.” Decision at 12-13. During those three decades, Petitioner married, divorced, and then raised his two daughters as a single father. He remains on friendly terms with his ex-wife, and his daughters continue to live with him as young adults. (Although the Decision did not mention this fact, Petitioner’s household also included two granddaughters and recently also included his daughters’ stepbrother, the child of his ex-wife and another man, during that boy’s high school years.  Petitioner helped this young man graduate from high school despite a learning disability. AR 117-118.) The Decision noted that Petitioner’s daughters “continue to be a huge support system for him. He also retains a strong network of support from friends and extended family.” Decision at 14.
            Petitioner was 54 years old at the time of the administrative hearing (and, as the Decision noted, the SORB “considers advanced age to have a significant mitigating effect when the offender is 50 years of age or older.” Decision at 13.) He had been sober for nearly three decades. As of the 2019 hearing, Petitioner had worked for the same employer for more than 12
 
                                                            -4-
 
years, as general manager of an oil tank removal and oil distribution company. (Although the Decision did not mention this fact, the SORB member’s preliminary classification said that his “stable lifestyle” included that Petitioner is a homeowner. AR 165. The Administrative Record at the hearing included the deed to that home. AR 97.)
            The Decision discussed at some length the testimony and written report of Dr. Eric Brown, a psychologist who testified for Petitioner. (Although the Decision did not describe Dr. Brown’s qualifications, he testified that he had been evaluating and treating sex offenders for 25 years, had performed more than 300 sex offender evaluations, and had testified in this capacity more than 45 times. Transcript of Hearing (“TR”) at 37). Dr. Brown noted that Petitioner scored a “1” on the STATIC-99R test, which “puts him in the low risk category with a 3.9% recidivism rate over five years.” Decision at 15. The Decision quoted Dr. Brown’s report as follows: “Considering the fact that [Petitioner] does not exhibit any of the behavioral characteristics that are usually associated with sex offenders, his likelihood to reoffend is extremely remote. Since [Petitioner’s] index sex offense 36 years ago, the totality of his behavior steadfastly and cumulatively affirmed that he does not pose any substantive danger to reoffend.” Id. After additional discussion of Dr. Brown’s testimony and report, the Hearing Examiner concluded, “Overall, I agree with Dr. Brown’s conclusion that the Petitioner is extremely low risk to reoffend.” Decision at 16.
            Nonetheless, the SORB’s Hearing Examiner issued a final classification of Level 1. According to the Decision, five of the statutory and regulatory factors employed in a classification analysis cut in favor of a risk of re-offense or danger to the public. But four of those factors were rooted in the details of the 1983 rape: (1) that Petitioner was under the influence; (2) when he raped a stranger; (3) in a manner involving a high degree of physical
 
                                                            -5-
 
contact; and (4) the victim was threatened and suffered injury to her elbows. Decision at 17-18. The other aggravating factor cited in the Decision was only slightly less stale; that Petitioner “has had some contact with the criminal justice system, but he has been offense-free for nearly three decades.” Decision at 17. Comparing these aggravating factors to the many mitigating factors, some (but not all) of which are described earlier in this Memorandum of Decision, the Hearing Examiner found “by clear and convincing evidence that the Petitioner poses a low risk to reoffend [and] a low degree of dangerousness.” Decision at 19.
Analysis
            1. Due Process
            In Commonwealth v. Hammond, 477 Mass. 499 (2017), the Supreme Judicial Court described the dilemma created by the SORB’s interpretation of G.L. c. 6, § 178K(2)(d) as requiring any offender who committed a violent sexual crime (or a sex crime against a child) to remain on the register forever. Hammond was a criminal appeal. The defendant there challenged, on due process grounds, the authority of the sentencing judge to require her to register as a sex offender. The Hammond court did not interfere with that sentencing decision, but in dicta it laid out a path that, the court suggested, might well get that defendant off the registry:
We are not blind to the virtual certainty that the defendant will be classified as at least a level one sex offender. The statute does not permit the board to relieve any offender who has been convicted of an offense involving a child. See G.L. c. 6, § 178K(2)(d). Nothing we have said, however, prevents the defendant from reasserting her as applied due process challenge during stage two of the [classification] process . . . Although SORB as an administrative agency does not have the authority to find the statute unconstitutional on its face or as applied, there appears to be nothing in the statute that would prevent it, when making its classification decision, from finding that the defendant presents no risk of re-offense or danger to the public, if that is the case. The defendant would be able to present that favorable finding . . . in an appeal to the Superior Court under G.L. c. 6, § 178K and G.L. c. 30A, § 14, or in a declaratory judgment action, and argue that the
 
                                                            -6-
 
mandatory registration requirement of G.L. c. 6, § 178K(2)(d) constitutes a due process violation.
Id. at 513.
            Even before Hammond, and afterwards as well, that roadmap was followed regularly by offenders whom the SORB had classified as Level 1 offenders even after finding them to pose no risk of re-offense and no danger to the public. Two years after Hammond, Judge Gordon of this court stated:
[I]t appears to be the clear consensus of the courts in Massachusetts that Section 178K(2)(d) of the SORL [the Sex Offender Registry Law] cannot be construed to compel a Level 1 classification, with its attendant registration requirement, based exclusively on the historical fact of a sex offense – absent clear and convincing evidence carrying predictive value that the offender poses a cognizable risk of re-offense and a bona fide danger to the community for whom protection is intended. Where, as here, an offender has been determined by SORB to pose no continuing threats along these lines, Section 178K(2)(d) does not require – and the Massachusetts Declaration of Rights does not permit – imposition of the SORL’s registration requirement.
Doe No. 0071 v. Sex Offender Registry Bd., Suffolk Superior Court No. 2019-2093-C (October 4, 2019), slip op. at 7. To illustrate this “clear consensus,” Judge Gordon cited eight Superior Court decisions, by eight different judges, relieving such offenders of the obligation to register. Id. at 6. Missing from the list, probably because it was a decision granting a preliminary injunction rather than deciding an appeal on the merits, is one of my own past decisions employing similar reasoning. See Coe No. 4801 v. Sex Offender Registry Bd., Suffolk Superior Court No. 2014-934 (April 2, 2014).
            In Doe No. 0071, Judge Gordon discussed a series of appellate cases that questioned the constitutionality of placing on the registry an offender who poses no current risk. See id. at 3-6. One of those appellate cases is particularly relevant to today’s case. In Doe No. 2431 v. Sex Offender Registry Board, 74 Mass. App. Ct. 383 (2009), the Appeals Court declared that “a sex offender cannot be required to register simply because he was – however long ago in the past –
 
                                                            -7-
 
convicted of a sexually violent offense if he poses no current risk.” Id. at 386. After persuasively analyzing additional appellate law on this question – an analysis I adopt here without repeating it – Judge Gordon issued a declaratory judgment “that the imposition of mandatory registration by SORB (pursuant to Section 178K(2)(d) of the Sex Offender Registry Law) against any sex offender determined to pose no risk of re-offense and no danger to the public is unconstitutional.” Doe No. 007, slip op. at 10. The SORB did not appeal this declaratory judgment.
            The only distinction between today’s case and the many cases cited by Judge Gordon is that the finding that Petitioner poses no cognizable risk here appeared in a recommended classification decision by a SORB member, rather than in a final classification by a SORB hearing examiner after a hearing. Because of the standard classification procedure followed by the SORB, that is a distinction without a difference.
            That standard procedure is a two-step process. The process begins with a recommended classification decision. An offender who is unsatisfied with that classification has only one option: he can claim his right to a hearing at which a final classification will be issued.
            In the circumstances of this case, that right to a hearing is illusory. At the preliminary classification stage, a SORB member found that Petitioner posed no cognizable risk – and yet required him to register anyway, because she believed that the statute demanded it.  As the SORB member’s statement made clear, the final classification hearing would inevitably yield the same result. No matter what evidence Petitioner put before the Hearing Examiner there, the SORB was going to keep him on the registry, because he had committed one violent sex offense, nearly four decades earlier.
 
                                                            -8-
 
            In Doe No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780 (2008), the Supreme Judicial Court wrote:
There is no dispute that sex offenders are a serious threat to the Nation, and that the public interest in protecting vulnerable members of the community from sexual predators is a compelling one. But it is nearly impossible to conclude that this interest and the statute’s defined purposes are served by imposing . . . a registration requirement on a person who committed a single sexual offense more than twenty-four years before the board’s imposition of the requirement, and whose demonstrable record since that time contains no evidence whatsoever of predatory sexual acts.
Id. at 790. It is equally true that, once the SORB has stated in a preliminary classification decision that an offender “now presents no cognizable risk to reoffend,” no purpose is served by the even more draconian procedure that SORB employed here: (1) putting the offender on the registry anyway by way of a preliminary classification that ignores his lack of cognizable risk; (2) forcing the offender to appeal that classification by participating in a final classification hearing; (3) regardless of the evidence at that classification hearing, adopting a final classification decision that requires the offender to remain on the registry; and (4) requiring the offender to appeal that final classification to the Superior Court, which will then, finally, take him off the registry. If it violates an offender’s due process rights to put him through one classification hearing with a foreordained result, it is doubly unconstitutional to require him to undergo two such classification procedures.
            In its opposition, the SORB barely addresses this due process issue. At oral argument, for example, the SORB’s counsel simply stated that the preliminary classification decision, finding that Petitioner now posed no cognizable risk, is not in the Administrative Record, implying that it should therefore be ignored. In fact, that decision was before the Hearing Examiner; it is found in the Administrative Record at page 165. But even if it were not, neither the Hearing Examiner nor the Superior Court should ignore the fact that, at the first step in the
 
                                                            -9-
 
classification process, a psychologist member of the SORB found that Petitioner now poses no cognizable risk. For that reason, Petitioner is entitled to a judgment on the pleadings in this case removing him from the registry.
            2. The Decision is Unsupported by Substantial Evidence and is Arbitrary and Capricious
            Even if there were no due process violation here, Petitioner would still be entitled to have the Decision overturned, under the usual analysis employed in Chapter 30A appeals of administrative decisions. “SORB’s final classification of a sex offender is subject to judicial review under G. L. c. 30A, § 14.” Doe No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 108 (2014); see G. L. c. 6, § 178M. “A reviewing court will not disturb SORB’s decision unless that decision was (a) in violation of constitutional provisions; (b) in excess of SORB’s authority; (c) based upon an error of law; (d) made upon unlawful procedure; (e) unsupported by substantial evidence; (f) unwarranted by facts found by the court, where the court is constitutionally required to make independent findings of fact; or (g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” Doe No. 68549, 470 Mass. at 108- 109, citing G. L. c. 30A, § 14(7); see Doe No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 614-615 (2010).
            “The court must ‘give due weight to [SORB’s] experience, technical competence, and specialized knowledge . . . as well as to the discretionary authority conferred upon it.’” Doe No. 68549, 470 Mass. at 109, quoting G. L. c. 30A, § 14(7). “In addition, SORB’s guidelines ‘must be accorded all the deference due to a statute.’” Id., quoting Doe No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013) (citation omitted). In a Chapter 30A appeal, such as this one, the petitioner bears the burden of demonstrating the invalidity of the administrative
 
                                                            -10-
 
decision. See Merisme v. Board of Appeal on Motor Vehicle Liab. Policies and Bonds, 27 Mass. App. Ct. 470, 474 (1989).
            The Hearing Examiner’s Decision concluded, based on clear and convincing evidence, that Petitioner “presents a low risk of re-offense” and “presents a low degree of dangerousness.” Decision at 18. Because low risk is the sine qua non of a Level 1 classification, that is the classification adopted by the Hearing Examiner.
            That final classification Decision cannot stand, because it suffers at least two of the infirmities mentioned in Doe No. 68549 and G.L. c. 30A, § 14(7). The record before the Hearing Examiner lacked substantial evidence to support the Level 1 classification, and, based on the record as a whole, the Decision was arbitrary and capricious.
            With one exception, all of the “Applicable Risk Elevating Factors” (Decision at 9) cited by the Hearing Examiner arose directly from the rape – the 1983 rape – itself: that Petitioner raped a stranger, with a high degree of physical contact, while under the influence, resulting in injury to the victim’s elbows. The fifth and final factor cited as suggestive of risk or danger was that Petitioner later had minor contact with the criminal justice system – but, as the Decision itself noted, he had been offense-free for three decades. Decision at 12-13.
            Because, as the SORB points out, classification decisions involve balancing Risk Elevating Factors against “Risk Mitigating Factors” (Decision at 12), those stale facts might have been sufficient to justify a Level 1 classification were they the only facts in the record before the Hearing Examiner. But they were not. The record was replete with facts, some cited in the Decision and some ignored there, that demonstrated that Petitioner’s one sex offense, inarguably heinous as it was, nonetheless was a one-time mistake, made nearly four decades ago by an 18- year-old, far from home, and in the thrall of adults who were isolating him from society and
 
                                                            -11-
 
teaching him to be a criminal. I will not repeat all of those facts, some (but not all) of which I describe above, except for the most relevant facts of all – more than 30 years of offense-free time in the community, and no other sex crimes before or after the 1983 rape.
            One Risk Mitigating Factor deserves careful attention. The Decision discussed at some length the testimony of Dr. Brown, the expert presented by Petitioner. The Hearing Examiner even quoted Dr. Brown’s conclusion: “Since [Petitioner’s] index sex offense thirty-six years ago, the totality of his behavior has steadfastly and cumulatively affirmed that he does not pose any substantive danger to reoffend.” Decision at 15 (emphasis added). See also id. (where the Decision also notes Dr. Brown’s opinion that Petitioner “does not currently pose[] a cognizable risk of re-offense, danger or any meaningful, ongoing threat to the public”). From these opinions, however, the Hearing Examiner found that Dr. Brown had reached the “conclusion that Petitioner is extremely low risk to reoffend,” rather than, as Dr. Brown said in his report, that Petitioner does not pose any danger to reoffend or any threat to the public. Id. at 16.
            The Hearing Examiner mutated Dr. Brown’s unqualified statements about “no risk” into a conclusion of “extremely low risk” because of something Dr. Brown said on cross-examination See id. (“The doctor further stated, ‘it is a remote risk because we cannot say absolutely no risk at all.’”). But here Dr. Brown, an experienced licensed psychologist, was simply being appropriately cautious about uttering absolutes. But apparently the Hearing Examiner decided that absolutes were necessary. If Dr. Brown engaged in any hedging whatsoever, the Hearing Examiner would not find that Petitioner posed no cognizable risk – even though a SORB member psychologist had found exactly that earlier the same year.
            Furthermore, Dr. Brown’s testimony at the hearing undercut this softening of his opinion by the Hearing Examiner. As to the risk of re-offense, Dr. Brown actually said the following:
 
                                                            -12-
 
“the reason I don’t say that it’s, it can’t happen is because, you know, we’re speaking about probabilities and there is not such a thing as zero probability, but it’s infinitesimally small. Again I would say that there is no cognizable risk for reoffending at this point.” TR at 36. Similarly, as to danger to the community, Dr. Brown’s actual words were as follows: “It’s my opinion that he really represents no significant cognizable risk of dangerousness to the community. I mean the facts just, you know, scream out, the fact that first, it was an adolescent offense . . . He doesn’t meet any of the risk factors for recidivism at this point in time, and really not just this point in time but really through the bulk of his adulthood.” Id. at 36-37.
            As the Decision recognized, the Hearing Examiner could only classify Petitioner as a Level 1 sex offender if there were clear and convincing evidence that he posed some risk of re- offense or some danger to society. Decision at 18; see Doe No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 300 (2015). Evidence meets the clear and convincing standard if it is “sufficient to convey a ‘high degree of probability’ that the contested proposition is true.’” Doe No. 380316, 473 Mass. at 309 (citation for quotation omitted by Doe No. 380316 court).
            The “SORB’s burden is to show that [Petitioner] presents a ‘cognizable risk of re-offense, not merely a hypothetical or speculative potential risk.’”  Doe No. 24341 v. Sex Offender Registry Bd., 74 Mass. App. Ct. 383, 387-388 (2009), quoting Doe No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 762 (2006). In the testimony of Dr. Brown on which the Hearing Examiner relied, Dr. Brown was simply refusing to rule out such “hypothetical or speculative potential risk.”
            Moreover, “registration can be required only based on an assessment ‘of the person’s current level of dangerousness and risk of re-offense.’” Doe No. 24341at 387, quoting Doe No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 787 (emphasis added by Doe No. 24341
 
                                                            -13-
 
court). The only conclusion that can be drawn from the Administrative Record here is that Petitioner might have presented a cognizable risk of re-offense, or danger to the public, in the early 1980s, but not since.
            I am acutely aware of my obligation, in a Chapter 30A appeal, not to substitute my judgment for that of the Hearing Examiner, and I honor that obligation here. But the Administrative Record in this case simply does not contain substantial evidence supporting the Decision’s conclusion that there is clear and convincing evidence – that is, evidence supporting a “high degree of probability” – that Petitioner poses even a low risk of re-offense or low degree of danger to the public.  Moreover, on this record, the Hearing Examiner’s finding was arbitrary and capricious.
Conclusion and Order
            Ordinarily, a judicial finding in favor of an offender petitioner would result in remand to the SORB for another hearing at which the SORB would once again classify Petitioner. However, that result is inappropriate here. Because of the violation of Petitioner’s due process rights described above, Petitioner is entitled to an order that his name be removed from the registry, as Judge Gordon decided in Doe No. 0071 and other Superior Court judges have decided in other similar cases, including those cited by Judge Gordon in Doe No. 0071.
            Petitioner’s Motion for Judgment on the Pleadings is ALLOWED. Petitioner is RELIEVED of his obligation to register as a sex offender, and Defendant Sex Offender Registry Board is ORDERED to remove Petitioner’s name from the Sex Offender Registry.